IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00612 COA

FRANK SIVORI A/K/A FRANK SAVORI APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: THOMAS M. FORTNER

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: DEWITT ALLRED III

DISTRICT ATTORNEY: PATRICIA BENNETT AND GLENDA R. HAYNES

NATURE OF THE CASE: CRIMINAL: AGGRAVATED ASSAULT

TRIAL COURT DISPOSITION: CONVICTED OF AGGRAVATED ASSAULT ON A LAW-ENFORCEMENT OFFICER, AND FOUR COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF THIRTY YEARS FOR CT I AND TWENTY YEARS EACH FOR CTS II, III, IV, & V IN THE CUSTODY OF THE MDOC, ALL TERMS TO RUN CONSECUTIVELY

MOTION FOR REHEARING FILED: 9/22/97

CERTIORARI FILED: 11/6/97

MANDATE ISSUED: 2/12/98

BEFORE THOMAS, P.J., HERRING, AND SOUTHWICK, JJ.

HERRING, J., FOR THE COURT:

Frank Sivori, the Appellant, was convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, of one count of aggravated assault upon a law enforcement officer and four counts of aggravated assault on four other people. Sivori was charged and convicted of shooting at passing motorists on Interstate Highway 20 from his bathroom window at the Stonewall Jackson Motel. Following the jury verdict, Sivori was sentenced to serve a term of thirty years with the Mississippi Department of Corrections for the assault on the law enforcement officer. Additionally, he was sentenced to serve twenty years on each of the other four counts of aggravated assault, with all of the terms of incarceration to run consecutively. On appeal, Sivori cites the following errors[1] as the basis for his assertion that his convictions should be reversed and set aside.

I. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL PURSUANT TO AND GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, SECTIONS 24 AND 26 OF THE MISSISSIPPI CONSTITUTION.

II. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S REQUEST THAT THE TRIAL JURY BE INSTRUCTED AS TO THE LESSER INCLUDED OFFENSE OF SIMPLE ASSAULT ON EACH COUNT OF THE INDICTMENT.

III. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE AT TRIAL, OVER DEFENSE COUNSEL'S OBJECTION, A MUG SHOT OF THE DEFENDANT AS THE PHOTOGRAPH WAS IRRELEVANT TO ANY MATERIAL ISSUE, WAS UNFAIRLY

PREJUDICIAL AND SERVED ONLY TO INFLAME THE PASSIONS OF THE TRIAL JURY.

IV. THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT'S REQUESTED INSTRUCTION D-2, A CIRCUMSTANTIAL EVIDENCE INSTRUCTION, AS THE INSTRUCTION WAS WARRANTED BY THE EVIDENCE AND WAS NOT SUFFICIENTLY COVERED BY OTHER INSTRUCTIONS OF THE TRIAL COURT.

V. THE TRIAL COURT ERRED IN PROHIBITING THE DEFENDANT IN HIS CASE-IN-CHIEF FROM ELICITING MATERIAL AND RELEVANT IMPEACHMENT TESTIMONY FROM OFFICERS MOORE, JACKSON AND WINSTEAD, AND AS A RESULT, THE DEFENDANT WAS DENIED A FUNDAMENTALLY FAIR TRIAL.

We find no reversible error and affirm the judgment of the trial court.

## I. THE FACTS

Frank Sivori was a licensed, over-the-road truck driver for KLM, which had its local base of operation in Flowood, Mississippi. While waiting for his truck to be repaired, he checked into the Stonewall Jackson Motel, located on U.S. Highway 80 in the City of Jackson. During the afternoon of June 19, 1994, the City of Jackson's Police Department (JPD) received complaints from several motorists traveling west on Interstate 20 near the Ellis Avenue exit. The windows of their vehicles had been shattered, and their cars had been damaged as a result of what they considered to be gunshots aimed at their vehicles. Thereafter, Jackson police officers were dispatched to the area where the shootings were reported. Officer Richard Moore actually stopped his vehicle on the interstate highway near the Ellis Avenue exit and turned on his blue light. Within a brief period of time, a window in his vehicle was also shot out. Officer Moore then called for additional backup law enforcement personnel to come to the scene. By observing the gunshot flashes, Moore determined that the gunshots were coming from the north side of the interstate highway and from a location in the vicinity of the Stonewall Jackson Motel. The motel faced U. S. Highway 80, but the rear of the building faced Interstate 20.

Officer Henry Jackson observed an open window on the rear side of the motel and heard gunshots coming from it. At one point, he actually got beneath the window on the outside of the building and heard two more gunshots coming from it. Jackson promptly advised his fellow officers at the scene of this information. In addition, he passed the information on to members of the JPD SWAT team. JPD officers finally determined that the armed assailant was located in Room 127 of the motel and that the gunshots were coming from an open bathroom window connected to that room.

After knocking on the door and demanding that Sivori allow them to enter, SWAT team members, using a key, entered Room 127. Once inside, they found Sivori lying in the only bed in the room with

the covers pulled up to his neck. After arresting Sivori, they also found a .22 caliber semi-automatic rifle leaning against the wall in the corner of the room, several rifle clips with live rounds in them, and a small box of .22 caliber bullets with approximately 120 live rounds left in the box. One 100-round rifle clip had already been placed in the rifle, and a live round was in the chamber of the weapon. Several empty shell casings were found on the bathroom floor, and bullet holes were observed in the bathroom window frame. Later tests confirmed that the weapon was functional and capable of being fired at the time of Sivori's arrest.

At trial, Sivori testified and admitted that he had purchased the weapon as well as the rifle clips and ammunition, at Wal-Mart but denied that he had shot anyone. He did state that earlier on that day, he and two other "fellows" who were staying at the motel went out to the river and shot at snakes. According to Sivori, they later returned to the motel, ate a meal, and got drunk at a local bar. Thereafter, he came to his room and went to sleep. Sivori did not recall the names of his two companions and only identified them as people he had met while staying at the motel. According to Sivori, he had no access to another vehicle while his truck was being repaired, and he traveled to Wal-Mart to buy his new rifle in a taxicab. He denied shooting anyone out of his bathroom window or at any passing motorists. After hearing all of the evidence, the jury convicted Sivori on all counts of aggravated assault with which he was charged.

## II. ANALYSIS

### I. DID THE TRIAL COURT ERR IN DENYING SIVORI'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL PURSUANT TO AND GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE III, SECTIONS 24 AND 26 OF THE MISSISSIPPI CONSTITUTION?

The chronological sequence of events forming the basis of Sivori's claim of a speedy trial violation are as follows:

June 19, 1994: Sivori was arrested and formally charged with multiple aggravated assault offenses, having occurred on the same date.

October 11, 1994: Sivori was indicted in a six count indictment charging him with six counts of aggravated assault, one of which was upon a law enforcement officer acting within the scope of his employment.

November 29, 1994: Sivori was arraigned on the charges contained in the indictment, at which time he was represented by counsel.

March 13, 1995: Sivori, acting *pro se*, filed a motion with the clerk asking that his case be set for trial

within thirty days. A copy of this motion was never sent to the district attorney, and the motion was never noticed for hearing.

March 27, 1995: Sivori filed with the clerk, *pro se*, a motion to dismiss alleging that his due process right to a fast and speedy trial had been violated. No copy of this motion was sent to the district attorney, and the motion was never noticed for hearing.

April 10, 1995: Sivori's first trial date, previously set by the trial court. This trial setting was continued at the request of Sivori's attorney, though a motion for continuance was not filed. On this same day, Sivori filed a *pro se* motion with the circuit court requesting an omnibus hearing on the various motions filed by Sivori.

April 18, 1995: Sivori acting *pro se* filed a motion to suppress evidence gathered by Jackson Police Officers on the day of his arrest on the ground that the search and seizure was in violation of his constitutional rights.

June 6, 1995: Sivori's second trial date previously set by the trial court. This trial setting was again continued at the request of Sivori's counsel. While the record reflects that a continuance was granted, no motion to that effect was ever filed.

June 15, 1995: Sivori filed a writ of mandamus with the clerk of the Mississippi Supreme Court in which he requested a hearing on all pending motions filed by him and restated his request for a speedy trial.

June 24, 1995: Sivori, through counsel, filed another motion to suppress evidence obtained pursuant to the search and seizure conducted by Jackson Police Officers on the day of Sivori's arrest.

June 27, 1995: All pre-trial motions, filed by Sivori individually and by counsel, were argued pursuant to a mandate from the Mississippi Supreme Court. The trial court

denied Sivori's motion to dismiss for failure of the State to provide a fast and speedy trial.

July 25, 1995: Sivori's third trial date. This setting was continued at the request of Sivori's counsel.

August 2, 1995: Sivori's fourth trial date. This setting was continued at the request of Sivori's counsel.

August 9, 1995: Sivori's jury trial commenced.

August 14, 1995: Sivori's jury trial concluded resulting in a jury verdict of guilty as charged in five counts of the indictment, the sixth count having been remanded to the file by the district attorney.

Sivori contends that his *constitutional right* to a speedy trial has been violated. The provisions of the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, sections 23 and 26 of the Mississippi Constitution of 1890 guarantee a speedy trial to a criminal defendant. Sivori claims that the provisions of the U.S. Constitution and of the Mississippi Constitution were violated. Sivori does *not* claim, however, that the provisions of section 99-17-1 of the Mississippi Code of 1972, as amended, were violated. Section 99-17-1 states:

Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been *arraigned.*

Miss. Code Ann. § 99-17-1 (Supp. 1995) (emphasis added).

According to the record before us, Sivori was arraigned on November 29, 1994. His case was originally set for trial on April 10, 1995, but was thereafter continued at Sivori's request on several different occasions until August 9, 1995, when the trial commenced. One hundred thirty-two days elapsed from November 29, 1994, to April 10, 1995. Because any delays in the commencement of the trial requested by Sivori are necessarily charged to him, it is readily apparent that the 270 day requirement of section 99-17-1 was not violated. *See McGhee v. State*, 657 So. 2d 799, 805 (Miss. 1995).

While it is true that Sivori demanded a speedy trial through various letters and motions sent to the circuit clerk by him from April through June, 1995, it is also true that he simultaneously requested continuances through his attorney. Moreover, Sivori's requests for a speedy trial were never sent to the district attorney's office and were never noticed for hearing. However, following Sivori's *pro se* request which he filed with the Mississippi Supreme Court, a hearing was set for June 15, 1995, by the trial court at the Mississippi Supreme Court's direction to hear his motions. We are of the opinion that under such circumstances, the delay in the trial which occurred after April 10, 1995, should be charged to Sivori. *Id.*; *see also Jasso v. State,* 655 So. 2d 30, 34 (Miss. 1995). Thus, we now turn our attention to Sivori's contention that his *constitutional* right to a speedy trial was violated, notwithstanding the fact that there was no violation of his *statutory* right to a speedy trial pursuant to section 99-17-1.

Sivori asserts that his constitutional right to a speedy trial was violated and that his indictment should therefore be dismissed. Unlike his statutory right to speedy trial pursuant to section 99-17-1, Sivori's constitutional right to a speedy trial attached *at the time of his arrest* on June 19, 1994. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). "Once the right attaches, this Court will follow the test established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 515 (1972), to determine whether there has been a violation of a defendant's right to a speedy trial." *Simmons v. State*, 678 So. 2d 683, 686 (Miss. 1996). If Sivori's constitutional right to a speedy trial has been

violated, a dismissal with prejudice is required. *Taylor v. State,* 672 So. 2d 1246, 1262 (Miss. 1996).

In *Barker,* the United States Supreme court set out four factors to be considered when the issue of whether or not a defendant's constitutional right to a speedy trial has been violated. Those factors are: (1) length of the delay, (2) reason for the delay, (3) whether the defendant asserted his/her right to a speedy trial, and (4) whether the defendant was prejudiced by the delay. *Barker*, 407 U.S. at 529 (1972); *see also McGhee v. State*, 657 So. 2d 799, 801 (Miss. 1995). Sivori contends that the trial court incorrectly applied and evaluated these factors. Thus, we must analyze the facts of this case in relation to the four factors enunciated in *Barker.*

1. *Length of the delay.*

The relevant time, for constitutional rights purposes, begins to run from the date of arrest. *Smith*, 550 So. 2d at 408. Sivori was arrested on June 19, 1994. His trial did not take place until August 9, 1995. Thus, 416 days or over fourteen months elapsed from Sivori's arrest until the day of his trial. The Mississippi Supreme Court has stated that "any delay of eight months or longer is *presumptively prejudicial*." *Id.* (emphasis added). Thus, the trial court correctly determined that an analysis of all the *Barker* factors was required. *Rhymes v. State,* 638 So. 2d 1270, 1272 (Miss. 1994).

Sivori's trial was first scheduled for April 10, 1995. After that point, the trial was delayed until August 9, 1995, as a result of requests made by Sivori's attorney. On April 13, 1995, Sivori requested, through a motion filed *pro se*, that his case be set for trial within thirty days, and on June 12, 1995, he also filed, *pro se*, a writ of mandamus requesting a hearing on his motion for a speedy trial and other motions which he filed. However, Sivori also requested continuances through his attorney in a virtually simultaneous fashion. We, therefore, conclude that the trial delays after April 10, 1995, were caused by Sivori. Delays in a criminal trial made at the request of a defendant are not charged against the State when speedy trial issues are involved. *State v. Magnusen*, 646 So. 2d 1275, 1282 (Miss. 1994). As such, the period of time which we will consider in determining whether Sivori's constitutional right to a speedy trial has been violated is the ten-month period beginning with the date of his arrest, June 19, 1994, until the first scheduled date of his trial, April 10, 1995.

2. *Reason for the delay.*

Delays not attributable to the defendant are counted against the State unless the State can show good cause. *Vickery v. State*, 535 So. 2d 1371, 1377 (Miss. 1988). Moreover, negligence in causing the delay is weighed against the State, although not heavily. *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994). In this case, the initial delay between the date of Sivori's arrest on June 19, 1994, and his indictment on October 11, 1994, constituted 114 days. Sivori's case was presented to the Hinds County Grand Jury that was meeting in October, 1994, instead of the grand jury that met in August, 1994. The trial court criticized this delay and stated that the delay "weighed heavily" against the State. On the other hand, the trial court concluded that the period of time elapsing from the date of Sivori's indictment to his arraignment on November 29, 1994, a period of 49 days, was not unusual because of the court's congested docket. Nevertheless, the trial court was of the opinion that the delay weighed lightly against the State.

3. *Assertion of Right to a Speedy Trial.*

The State, not a defendant, has the burden of bringing a defendant to trial in a speedy manner. *McGhee*, 657 So. 2d at 804. By asserting his right to a speedy trial, a defendant gains more "points" in regard to a *Barker* analysis, rather than if no request had been filed. *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990). On March 13, 1994, Sivori filed, *pro se*, a motion with the circuit clerk requesting that his case be set for trial within thirty days. At this time, he was represented by counsel, but there is no evidence that the motion was sent to the district attorney, his counsel, or that it was ever set for hearing. Previously, the case had been set for trial on April 10, 1995.

On March 27, 1995, Sivori, again acting *pro se*, filed a motion to dismiss his case because he had been denied a speedy trial. Once again, he was still represented by counsel, and there is a notation in his correspondence with the clerk that he had sent a copy to the "P.D.," which the trial court took to mean "public defender." Nevertheless, no copy was forwarded to the district attorney, and no effort was made to set the motion for hearing.

At some point during this period, the trial was continued from April 10, 1995, until June 6, 1995, *at the request of the defendant*, and apparently through counsel, in order that Sivori's counsel could have more time to prepare Sivori's defense. On April 10, 1995, Sivori, acting *pro se*, filed a motion for pretrial omnibus hearing, charging *inter alia* that his Fourth Amendment rights had been violated due to a warrantless search. According to the evidence, no copy of this motion was sent to his attorney or to the district attorney. Again, no effort was made to notice the motion for hearing until June 15, 1995, when Sivori filed a *pro se* "writ of mandamus" with the supreme court requesting that the trial court hear the motions mentioned above, as well as other motions filed by Sivori, *pro se*, including a motion to suppress evidence. Thereafter, additional motions were filed by Sivori through his attorney, the public defender. Sivori's motion to dismiss because of a speedy trial violation was finally heard by the circuit court on June 27, 1995, by mandate of the Mississippi Supreme Court.

The trial court held that Sivori's request for a speedy trial weighed slightly in his favor, even though it had not been sent to the district attorney's office or noticed for hearing. The court also noted that Sivori, at the time he was requesting a speedy trial, had simultaneously requested that his April 10, 1995, trial date be continued.

*4. Prejudice*.

As stated in *Skaggs v. State*, 676 So. 2d 897, 901 (Miss. 1996):

[D]elay may prejudice the defendant in two ways. First, the delay may actually impair the accused's ability to defend himself. We recognize "the possibility of prejudice inherent in any extended delay that memories will dim, witnesses become inaccessible, and evidence be lost . . . ."

(citations omitted). In addition,

excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is a part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett v. United States*, 505 U.S. 647, 655-56 (1992). An accused may also be prejudiced because of "restraints to his liberty." *Skaggs*, 676 So. 2d at 901. Moreover, as stated by our supreme court in *Giles v. State*, 650 So. 2d 846, 852 (Miss. 1995) the right to a speedy trial protects three such liberty interests: (1) the right to avoid excessive pretrial incarceration, (2) the right to minimize the accused's concern, and (3) the right to avoid the impairment of the defenses available to the accused. *See also State v. Magnusen*, 646 So. 2d 1275, 1284 (Miss. 1994). In *Giles,* the Mississippi Supreme Court commented directly on *Doggett v. United States* and said:

Although the *Doggett* court held that it is not necessary for a defendant to demonstrate particularized prejudice, this court has stated that it "will not allow speculative harm to tip the scales in [a defendant's favor]." *Noe v. State*, 616 So. 2d 298, 302 (Miss. 1993).

*Giles*, 650 So. 2d at 852.

In the case *sub judice*, Sivori was incarcerated from June 19, 1994, until the day of his trial, 416 days later. However, he made no showing that his pretrial incarceration or the pretrial delay impaired his ability to defend himself. There were no inaccessible witnesses nor was there any lost evidence. However, Sivori cites *Prince v. Alabama*, 507 F.2d 693, 707 (5th Cir. 1975), for the proposition that "prejudice [to the accused] is immaterial where consideration of the other three factors -- length of delay, defendant's assertion of his right, and reasons for the delay -- coalesce in the defendant's favor." *Id.*

The recent Mississippi Supreme Court cases dealing with speedy trial issues nevertheless focus on prejudice to the defendant as the most important factor of the four factors mentioned in *Barker v. Wingo* to be considered when determining whether a criminal defendant's Sixth Amendment rights have been violated. *See Hull v. State,* 687 So. 2d 708, 729 (Miss. 1996); *State v. Magnusen*, 646 So. 2d 1275, 1284 (Miss. 1994); *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994); *Stogner v. State*, 627 So. 2d 815, 819 (Miss. 1993); *Adams v. State*, 583 So. 2d 165, 170 (Miss. 1991). Mr. Justice Sullivan has been a consistent dissenter in these cases and in dissent wrote:

[I]n accordance with the unwise course this Court has adopted in constitutional speedy trial cases, the majority ignores the first three *Barker* factors and holds that no constitutional speedy trial violation occurred because *McGhee* failed to prove actual prejudice to his case.

*McGhee v. State*, 657 So. 2d 799, 806 (Miss. 1995). Nevertheless, in concurrence with these recent supreme court rulings, on this subject and considering all of the *Barker* factors together, we hold that Sivori's constitutional right to a speedy trial was not violated and that the accused suffered no measurable prejudice from the delay in his trial. Moreover, we further find that Sivori was apparently at odds with his counsel during the pretrial period, because his lawyer was seeking continuances while Sivori was writing letters to the circuit clerk demanding a speedy trial. Such activity cannot weigh heavily in favor of Sivori.

II. DID THE TRIAL COURT ERR IN NOT GRANTING THE DEFENDANT'S REQUEST THAT

THE JURY BE INSTRUCTED AS TO THE LESSER- INCLUDED OFFENSE OF SIMPLE ASSAULT ON EACH COUNT OF THE INDICTMENT?

In this case, Sivori contends that the trial court erred when it refused to allow the jury to be instructed that it could find Sivori guilty of the lesser-included offense of simple assault, if it first found that he was not guilty of aggravated assault. Our supreme court has stated on numerous occasions that jury instructions shall not be given "unless there is an evidentiary basis in the record for such." *Perry v. State*, 637 So. 2d 871, 877 (Miss. 1994) (quoting *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984)). On the other hand, the court also said in *Perry* and *Fairchild* that

[o]nly if this court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict . . . the defendant of [the lesser-included offense], can it be said that the refusal of the lesser-included offense instruction was proper.

*Perry*, 637 So. 2d at 877 (quoting *Fairchild*, 459 So. 2d at 801). *See also Haddox v. State*, 636 So. 2d 1229, 1238 (Miss. 1994). As stated in section 97-3-7(2)(b) of the Mississippi Code of 1972, as amended,

[a] person is guilty of aggravated assault if he . . . *attempts to cause* or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Miss. Code Ann. § 97-3-7(2)(b) (Rev. 1994). There is strong evidence to indicate that Sivori intentionally fired numerous rounds from a .22 caliber rifle at passing motorists from his open bathroom window at the Stonewall Jackson Motel. The issue is whether there is also evidence from which the jury could find Sivori guilty of simple assault. *See Hutchinson v. State*, 594 So. 2d 17, 19 (Miss. 1992). According to Mississippi law,

[a] person is guilty of simple assault if he . . . (b) *negligently* causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; . . . .

Miss. Code Ann. § 97-3-7(1)(b) (Rev. 1994) (emphasis added). Thus, we must determine whether there is any evidentiary basis for the proposition that Sivori "negligently" shot at the passing motorists and the police vehicle. We hold there is no such evidentiary basis and that this assignment of error has no merit. In our opinion, no hypothetical reasonable jury could convict Sivori of *negligently* shooting at motorists on Interstate Highway 20 on the day in question. Thus, a simple assault instruction would have been improper.

III. DID THE TRIAL COURT ERR IN ALLOWING INTO EVIDENCE, OVER SIVORI'S OBJECTION, A "MUG SHOT" OF THE APPELLANT, SINCE THE PHOTOGRAPH WAS IRRELEVANT, UNFAIRLY PREJUDICIAL, AND ONLY SERVED TO INFLAME THE PASSIONS OF THE JURY?

Sivori testified at trial that he did not respond to the knock on his door by members of the SWAT team because he was "inebriated." The prosecutor, over objection, then offered into evidence a photograph or "mug shot" of Sivori taken shortly after his arrest in order to allow the members of the jury to judge for themselves whether or not Sivori was drunk or otherwise able to comprehend his actions at the time of his arrest. As stated in *Hewlett v. State*, 607 So. 2d 1097, 1102 (Miss. 1992), there are three conditions that must be met prior to the introduction of mug shots in a criminal case: (1) the prosecutor must show a demonstrable need to introduce the photographs, (2) the photographs must not imply a prior criminal record, and (3) the manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs. *Id*. Moreover, the primary purpose for excluding mug shots is to avoid the implication of prior criminal conduct, which would necessarily and improperly reflect adversely upon a defendant's character. *See Ellis v. State*, 667 So. 2d 599, 610 (Miss. 1995).

In this case, as in *Hewlett*, the photograph was taken at the time of the arrest, not from a previous criminal offense, and does not indicate that Sivori was engaged in any prior criminal activity. If any error occurred in the admission of Sivori's mug shot, it did not affect a substantial right of Sivori. *See* M.R.E. 103(a). Thus, we decline to reverse Sivori's conviction on this issue. *See Hewlett*, 607 So. 2d at 1103.

IV. DID THE TRIAL COURT ERR IN NOT GRANTING DEFENDANT'S INSTRUCTION D-2, A CIRCUMSTANTIAL EVIDENCE INSTRUCTION?

Sivori contends that Instruction D-2 was a circumstantial evidence instruction that should have been given by the trial court for the jury's consideration. Instruction D-2 states as follows:

The Court instructs the Jury that under the law you do not have the right to convict Frank Sivori upon mere suspicion, regardless of how strong that suspicion might be. You may not convict Frank Sivori just because there may be a preponderance of the evidence against him or just because there may be a reason to suspect that he is guilty.

Suspicion, no matter how strong or convincing, never rises to the dignity of proof beyond a reasonable doubt. Before you may find Frank Sivori guilty, you must be convinced solely upon the evidence presented during this trial that Frank Sivori is guilty beyond a reasonable doubt.

Contrary to Sivori's assertion, Instruction D-2 is obviously not a circumstantial evidence instruction, since it does not require the State to "prove the accused's guilt, not only beyond a reasonable doubt, but to the exclusion of every other hypothesis consistent with innocence." *Jackson v. State*, 672 So. 2d 468, 485 (Miss. 1996) (quoting *Isaac v. State,* 645 So. 2d 903, 909 n.7 (Miss. 1994)). On the other hand, Instruction C-3 was granted by the trial court and stated the following:

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence that the Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence.

Instruction C-3 is a circumstantial evidence instruction. We agree that this is a circumstantial evidence case. However, we are also of the opinion that the trial court properly instructed the jury on this issue.

V. DID THE TRIAL COURT ERR IN PROHIBITING SIVORI FROM ELICITING CERTAIN TESTIMONY AND OTHER EVIDENCE FROM OFFICERS MOORE, JACKSON, AND WINSTEAD?

Sivori contends that the trial court arbitrarily prevented him from presenting testimony that was vital to his defense, thereby denying him a fair trial and due process of law. Specifically, Sivori contends that he called Officers Moore, Jackson, and Winstead for the defense to impeach their direct testimony previously given at trial and to demonstrate inconsistencies in their written reports and their live testimony previously given. Sivori further asserts that the officers located him in Room 127 through a conversation overheard by Officer Gary Clack between an unknown individual at the motel and law enforcement officers. In this conversation, the unknown man was purportedly heard to say that he had been down to the river shooting with someone who was acting crazy and who was staying in a room in the direction of where Room 127 was located. Sivori wanted to question Officer Jackson, in particular, about this conversation because Jackson had previously testified that he pinpointed the location of the assailant in Room 127 by working his way under the open bathroom window behind the motel. Sivori contends that Officer Jackson determined that the gun shots were coming from Room 127, not by working his way near the back side of the window, but from the information Officer Clack overheard. Sivori argues that he was attempting to attack Jackson's credibility by establishing inconsistencies in Jackson's police report and the testimony which he gave when he testified on behalf of the State. Sivori also wanted to question Officer Winstead about the source of the information which led the SWAT team to Room 127.

The right of a criminal defendant to call or subpoena an unlimited number of witnesses through compulsory process is not absolute, and the defendant may be required to show some "colorable need" to summons and/or question witnesses. *Edwards v. State,* 594 So. 2d 587, 590 (Miss. 1992)

(citation omitted). *See also Passman v. Blackburn*, 652 F.2d 559, 565 (5th Cir. 1981). Whether or not a defendant has shown such a colorable need is left to the sound discretion of the trial court. *Hentz v. State*, 542 So. 2d 914, 916 (Miss. 1989). On the other hand, a defendant's Sixth Amendment rights are violated when he is "arbitrarily deprived of 'testimony [that] would have been relevant and material, and . . . vital to the defense . . . .'" *Washington v. Texas,* 388 U.S. 14, 16 (1967). *See also Hentz*, 542 So. 2d at 916.

In the case *sub judice*, Sivori's contentions center around the trial court's refusal to permit further testimony of three police officers who had already testified for the State. Sivori argues that he needed to call Officer Winstead to establish or corroborate that Clack had overheard conversations between other officers and an unknown third party, which purportedly led the officers to Room 127. The trial court ruled that any further questioning of Moore and Jackson would be repetitious. We are unable to conclude that any substantial right of Sivori was affected by this ruling. *See* M.R.E. 103(a). Furthermore, it would appear that how the officers were led to Room 127 has questionable relevancy because no other evidence was presented to show that a rifle was fired from anywhere other than the Room 127 bathroom window. Thus, we cannot say that the trial court abused its discretion on this issue. Moreover, any testimony as to what Winstead overheard or was told by Clack would be hearsay, and therefore, inadmissible. *Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 754 (Miss. 1996).

For the reasons stated in this opinion, we affirm the judgment rendered against the Appellant in the trial court.

**THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION ON COUNT I OF AGGRAVATED ASSAULT ON A POLICE OFFICER AND SENTENCE OF THIRTY YEARS; COUNTS II, III, IV, AND V OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS ON EACH COUNT, WITH EACH SENTENCE TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. McMILLIN, P.J., NOT PARTICIPATING.**

1. The assignments of error are taken verbatim from Sivori's brief which he filed with the Court.