637 So.2d 871 (1994)
Ira Joe PERRY
v.
STATE of Mississippi.
No. 90-KA-1216.
Supreme Court of Mississippi.
June 2, 1994.
*872 David L. Walker, Batesville, for appellant.
Michael C. Moore, Atty. Gen., Mary Margaret Bowers, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before En Banc.

ON PETITION FOR REHEARING
BANKS, Justice, for the Court:
The prior decision in this case is withdrawn and these opinions substituted therefor. On petition for rehearing we have concluded that, once again, the trial court has foundered on the rock of failing to give a lesser included offense instruction. Accordingly, we reverse this possession with intent conviction, and remand for further proceedings.

I.
On November 16, 1988, Officers Wayne Mills and Robert King of the University of Mississippi Police Department requested the assistance of the Panola County Sheriff's Department in locating Ira Joe Perry and Anthony Ramone Johnson. An arrest warrant had been issued on the two subjects for burglary of an automobile on the University of Mississippi campus.
James Rudd, a Panola County Deputy Sheriff, assisted Officers Mills and King. Perry and Johnson were located at King's Cafe. Perry gave the officers permission to search his vehicle as well as his home.
According to the officers, Perry reached under the seat and gave them a bank bag containing marijuana and other items. They also found items relating to the arrest warrant. Deputy Rudd took the bag containing the marijuana which was later turned over to the Bureau of Narcotics.
Rod Waller, an agent with the Mississippi Bureau of Narcotics, obtained the bag from the Panola County Sheriff's Department on November 16, 1988. The bag contained rolling *873 paper, a small pocket calculator, a roach clip, 25 hand-rolled cigarettes containing marijuana, two (2) small manila envelopes containing marijuana and two (2) clear sandwich bags containing marijuana. Waller turned the marijuana over to the Crime Lab. J.C. Smiley, Sr., a forensic drug analyst and forensic toxicologist with the Mississippi Crime Laboratory, confirmed that the substance was marijuana.
Johnson testified that he and Perry had been engaged in the business of selling marijuana for approximately one and one-half weeks. According to Johnson, Perry purchased the marijuana in Memphis, Tennessee. Johnson stated that he and Perry planned to smoke some of the marijuana and sell the rest.
Perry denied selling marijuana. He did admit, however, to possessing marijuana on other occasions. Perry stated that he had been smoking marijuana since 1975. Perry also denied pulling the bank bag out of the car and giving it to the officers. He claimed that the bag was found on the floorboard of the car. According to Perry, Johnson had use of the car on the night prior to this incident.
Johnson, in rebuttal, denied having use of Perry's car on the 13th, 14th, or 15th of November. He also denied that he placed the marijuana in the vehicle.

II.
Ira Joe Perry was arrested on November 16, 1988, and released on bail in December of that year. He was not indicted until February 28, 1990. In April of 1990 he was granted a continuance in order to retain an attorney. In June he filed a motion to quash the indictment for lack of a speedy trial. That motion was denied and the case proceeded to trial in October. Perry was convicted of conspiracy to possess with intent to sell marijuana in violation of Miss. Code Ann. § 97-1-1(a) (Supp. 1993), Count I, and possession with intent to sell marijuana weighing less than one kilogram but more than one ounce in violation of Miss. Code Ann. § 41-29-139(a)(1), (Supp. 1993), Count II. Perry was sentenced to serve a term of four (4) years on Count I and eight (8) years on Count II. The terms were to be served consecutively.
Perry's motion for a new trial, or in the alternative a judgment notwithstanding the verdict, was denied. Feeling aggrieved, Perry filed this appeal assigning the following errors:
I. THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE CIRCUIT COURT JUDGE ERRED IN DENYING THE DEFENDANT'S BATSON V. KENTUCKY CHALLENGE.
III. THE CIRCUIT COURT JUDGE ERRED IN PERMITTING THE ASSISTANT DISTRICT ATTORNEY TO QUESTION ANTHONY JOHNSON CONCERNING THE APPELLANT SELLING MARIJUANA PRIOR TO NOVEMBER 16, 1988.
IV. THE CIRCUIT COURT JUDGE ERRED IN FAILING TO SUSTAIN THE DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE STATE QUESTIONED THE DEFENDANT ABOUT THE DIFFERENCE IN THE PENALTY FOR THE SALE OF A CONTROLLED SUBSTANCE AND POSSESSION OF A CONTROLLED SUBSTANCE.
V. THE CIRCUIT COURT JUDGE ERRED IN DENYING THE APPELLANT'S MOTION TO QUASH AND DISMISS THE INDICTMENT.
VI. THE CIRCUIT COURT ERRED IN REFUSING TO GRANT APPELLANT'S JURY INSTRUCTIONS D-1, D-2, and D-3.

III
Most of these assignments are without merit and require no extensive discussion. There was sufficient evidence to support the verdict on both counts. Johnson testified that he and Perry intended to sell the marijuana. The State provided race-neutral *874 reasons for peremptorily challenging three black females. Two were either neighbors or knew the defendant and the third gave responses indicating a lack of understanding, a fact specifically found by the trial judge. Lockett v. State, 517 So.2d 1346 (Miss. 1987). Johnson's testimony that he and Perry had been selling marijuana prior to the date in question and that Perry got the marijuana in Memphis was admissible pursuant to M.R.E. 404(b). Carter v. State, 450 So.2d 67 (Miss. 1984). The trial court did not err in denying Perry's motion for a mistrial when questioned about his potential sentence.
It is the rule in this State that where an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error. Simpson v. State, 497 So.2d 424, 431 (Miss. 1986); Gardner v. State, 455 So.2d 796, 800 (Miss. 1984).
Marks, 532 So.2d at 981.
Perry's right to a speedy trial was not denied as more fully discussed below. The one error requiring reversal is the failure to give the lesser included offense instruction as to Count II of the indictment.

IV.
Perry contends that he was denied his right to a speedy trial. He filed a motion to quash and dismiss the indictment of June 8, 1990. A hearing was held on this motion on June 22, 1990, and June 25, 1990, after which the trial judge denied the motion with a written opinion finding, among other things, that Perry had failed to assert his right and that he had suffered no prejudice.
Perry was arrested on Counts I and II on November 16, 1988. He made bail in December of 1988, and he was indicted on February 28, 1990. Bail was set on March 27, 1990. On April 13, 1990, Perry was granted a continuance in order to employ an attorney. Perry then filed his motion to quash and dismiss the indictment which was denied. The trial commenced on October 10, 1990.
For constitutional purposes, the right to a speedy trial attaches at "time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986). See also Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988). In Smith v. State, 550 So.2d 406 (Miss. 1989), this Court held that for constitutional purposes, the right to a speedy trial attached at arrest. Id. at 408. "Once the constitutional right to a speedy trial has attached, this Court must examine the facts of the case and engage in a functional analysis of those facts in accordance with Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether the constitutional right to a speedy trial has been denied." Handley v. State, 574 So.2d 671, 674 (Miss. 1990).
The Barker factors are weighted and balanced in each case according to its facts. The factors that must be considered are (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. "The weight given each necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive." Jaco v. State, 574 So.2d 625, 630 (Miss. 1990).

A. LENGTH OF DELAY
If the delay is not presumptively prejudicial, the analysis goes no further. Jaco, 574 So.2d at 630. In Smith v. State, 550 So.2d 406 (Miss. 1989), this Court held that an eight-month delay is presumptively prejudicial. Id. at 408. In the order overruling the motion to quash the indictment, the trial judge found that the 23-month delay from date of arrest until the date of trial was presumptively prejudicial. "This factor, alone, is insufficient for reversal, but requires a close examination of the remaining factors." Handley v. State, 574 So.2d 671, 676 (Miss. 1990).

B. REASON FOR THE DELAY
The Panola County Sheriff's Department sent the substance obtained from Perry to the Mississippi Crime Laboratory (hereinafter *875 Crime Lab). A report confirming that the substance was marijuana was needed to present to the Grand Jury. The Crime Lab did not provide its report until after July 17, 1989. The next meeting of the Grand Jury was in October 1989. The state did not present the matter to the Grand Jury at that time and could not offer any reason except oversight. The matter was presented to the next Grand Jury which met in February 1990.
The circuit court found that the state provided sufficient reasons for the delay:
It does not appear to this Court that there was an effort to delay obtaining the indictment to gain an advantage over the defendant or for any other reason that would assist the State in its prosecution; therefore, the length of delay has been [satisfactorily] explained by the State, and does not weigh against the State or in favor of the defendant.
It is error to assert that in the absence of intentional delay, the reason for delay does not weigh against the state. Negligence causing delay must also be weighed against the state, albeit not heavily. Barker v. Wingo, 407 U.S. at 531, 92 S.Ct. at 2192; Adams v. State, 583 So.2d 165, 168 (Miss. 1991). Here, at least a portion of the delay is attributable to official neglect in that a completed lab report was not delivered for a period of ninety days and there was a failure to present the matter to the next grand jury even after the report was received. The result is that three grand jury sessions were held after the report was completed, one of which was held after it was delivered to local officials, all without presentation of Perry's case. The result is that, counting the four months between his arrest and the completion of the report, there was a total delay of fifteen months between arrest and indictment. There was no explanation whatever for the failure to have presented this matter to the October 1989 grand jury, resulting in a four-month delay, and the explanation for the most of the previous eleven months cannot be described as neutral. It should not take four months to test for a substance as common as marijuana and it certainly should not take another four months to deliver the report once it is tested. This factor weighs against the state.

C. DEFENDANT'S ASSERTION OF RIGHT
It is the State that bears the burden of bringing the accused to trial in a speedy fashion. Vickery, 535 So.2d at 1377. "[A]n accused has no duty to bring himself to trial ... Still he gains far more points under this prong of the Barker test where he has demanded a speedy trial." Jaco, 574 So.2d at 632 (citations omitted).
Perry did not assert his right until he filed his motion to quash and dismiss the indictment on June 8, 1990. The trial judge weighed this factor against Perry:
The Defendant was in jail approximately one month of the above described delay. He has never until this day asserted his right to a speedy trial. It was not that he was in custody and unable to retain or consult with a lawyer. He did not hire an attorney until after he was served with the indictment, according to the Court file of this cause. After indictment he was granted a total of 45 additional days to obtain a lawyer prior to his arraignment.
The defendant's failure to assert his right to a speedy trial weighs against him.
The trial court was correct in this assessment. Barker v. Wingo, 407 U.S. at 528, 92 S.Ct. at 2190; Adams v. State, 583 So.2d at 169, 170.
In Adams we observed that a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial. Such a motion seeks discharge not trial. There we held that a demand for dismissal coupled with a demand for an instant trial was insufficient to weigh this factor in favor of the defendant, where the motion came after the bulk of the entire period of delay had elapsed. Id. Similarly, as the trial court observed, Perry never demanded trial; he demanded dismissal claiming that his speedy trial rights had already been violated. Although his June motion mentioned that trial was set for October, an *876 earlier trial date was not a part of the relief requested, even in the alternative.

D. PREJUDICE TO THE DEFENDANT
This prong of the analysis encompasses two dimensions. The first involves the actual prejudice resulting to the accused in defending his case. Jaco, 574 So.2d at 632. The second involves interference with a defendant's liberty.
[O]ne of the major purposes of the provision is to guard against inordinate delay between public charge and trial, which, to a defense on the merits, may "seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455 [463], 30 L.Ed.2d 468, 478 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.
Barker, 407 U.S. at 537, 92 S.Ct. at 2195 (White, J., concurring). See also Moore v. Arizona, 414 U.S. 25, 27, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973); Jaco, 574 So.2d at 632-33; Trotter v. State, 554 So.2d 313, 318 (Miss. 1989).
"Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532, 92 S.Ct. at 2192.
The only prejudice alleged by Perry is the accusation that the Lafayette County District Attorney and the district attorney in the case at hand were attempting to coordinate their cases in order to get Perry under the habitual offender statute. In finding that Perry failed to show any prejudice, the trial judge attached a copy of the Lafayette County indictment to the order denying Perry's motion to quash or dismiss the indictment. The Lafayette County indictment did not charge Perry as an habitual offender.
While it is true that in Doggett v. United States, 505 U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court held that prejudice other than the presumptive prejudice is not always prerequisite to a dismissal on speedy trial grounds, the court noted that tolerance with governmental "negligence varies inversely with its protractedness." 505 U.S. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 532. There the total delay was eight and one-half years between a conspiracy indictment and arrest, the last six of which were attributable to governmental negligence in pursuing the prosecution. The Court was concerned with the "costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." Id. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Doggett was not made aware of his indictment until eight and one-half years after it was rendered, creating obvious, if not tangibly demonstrable, problems for mounting a defense.
Clearly, the situation here before the Court is a far cry from that in Doggett. Perry was indicted within fifteen months of the offense and initial accusation. This is does not compare with the eight and one-half years of "persistent neglect" which justified dismissal in Doggett. Id. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 532. This not the kind of protracted delay which compels dismissal in the absence of some showing of actual prejudice. Adams v. State, 583 So.2d 165. Where, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting Perry's speedy trial claim. See, United States v. Beamon, 992 F.2d 1009, 1014 (9th Cir.1993) ("Measured by Shell [U.S. v. Shell, 974 F.2d 1035 (9th Cir.1992) (five year delay negligently caused sufficient for dismissal)] and Doggett the delays in this case are not "great." Seventeen and twenty months are only five to eight months longer *877 than the one year benchmark which triggers the speedy trial inquiry under Barker v. Wingo.)
This assignment of error is without merit.

V.
Perry contends that the lower court erred in refusing to grant D-2 which would have allowed the jury to find him guilty of simple possession of marijuana. The trial court reasoned that the facts of this case were distinguishable from those in Stringer v. State, 557 So.2d 796 (Miss. 1990). It sustained the state's objection on the ground that Stringer was distinguishable and that there was no proof supporting such an instruction.
"Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such." Fairchild v. State, 459 So.2d 793, 800 (Miss. 1984). Such instructions "must be warranted by the evidence." Monroe v. State, 515 So.2d 860, 863 (Miss. 1987). Furthermore, they should not be indiscriminately granted. Gangl v. State, 539 So.2d 132 (Miss. 1989).
In Harbin v. State, 478 So.2d 796 (Miss. 1985), this Court reiterated the test used to determine whether to grant a lesser included offense instruction:
We have recently articulated the test for determining whether a lesser-included offense instruction should be granted in a criminal prosecution. In Fairchild v. State, 459 So.2d 793 (Miss. 1984), we stated:
Only if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict ... the defendant of [the lesser-included offense], can it be said that the refusal of the lesser-included offense instruction was proper.
459 So.2d at 801; Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985). See also Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984).
Harbin, 478 So.2d at 799 (alteration original).
Applying that test to the evidence before this jury we find that Perry was an admitted marijuana user and that the amount of marijuana found was not so large as to preclude the purpose of personal use. The jury was free to disregard Perry's denial of knowledge of the marijuana, as it most certainly did, but it was also free to disregard his alleged accomplice's testimony that the marijuana was for sale. Looking at the evidence in the light most favorable to Perry, the jury could find that Perry knowingly possessed the substance for personal use.
The trial court was quite right in distinguishing Stringer from the facts of this case. The problem is that Perry did not seek a Stringer result from the trial court when he asked for this instruction. In Stringer we found that the state had not proven intent to distribute as a matter of law. 557 So.2d at 798, 799. In other words Stringer was entitled to a directed verdict on the issue of intent. Perry was not seeking a directed verdict with this instruction. He only sought to have the jury instructed that it could find a lack of intent to sell.
He was entitled to that instruction and the failure to give it compels reversal.

CONCLUSION
For the foregoing reasons the judgment of the trial court is reversed and this matter is remanded to that court for further proceedings.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
SULLIVAN, J., concurs in part and dissents in part with separate written opinion.
*878 SULLIVAN, Justice, concurring in part and dissenting in part:
I agree with Justice Banks that the trial court's failure to give a lesser included offense instruction requires reversal of Perry's conviction. However, because I would also reverse on the speedy trial issue, I respectfully dissent.
Perry was arrested on November 16, 1988. His constitutional right to a speedy trial attached on that date. Smith v. State, 550 So.2d 406, 408 (Miss. 1989). We analyze potential violations of a criminal defendant's right to a speedy trial by weighing the factors enunciated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Handley v. State, 574 So.2d 671, 674 (Miss. 1990).
The four Barker factors are correctly stated by Justice Banks: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; and, (4) prejudice resulting to the defendant. Justice Banks also correctly points out that we have steadfastly maintained that no one factor in itself is dispositive; rather, all the factors must be considered together in light of the particular circumstances of the case at hand. Jaco v. State, 574 So.2d 625, 630 (Miss. 1990). Yet today's decision ultimately hinges on the fact that Perry has not shown that he suffered actual prejudice. I disagree that Perry is somehow required to show that he has suffered particularized prejudice to prove a denial of his right to a speedy trial. Trotter v. State, 554 So.2d 313, 318 (Miss. 1989); citing Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973), citing Barker v. Wingo, supra. I also disagree that Perry's June 8, 1990, assertion of his constitutional right to a speedy trial weighs against him.
Once the length of the delay has been determined to be presumptively prejudicial, we then carefully analyze the other three Barker factors. Jaco, 574 So.2d at 630. As indicated by my brother Banks, the delay here (approximately 700 days) was clearly long enough to establish the presumption necessary to trigger an analysis of the remaining factors.
Justice Banks also appropriately weighs the reason for the delay against the state. The state's negligence in its effort, or lack thereof, to complete and deliver the lab report, constituted an unacceptable delay of fifteen months between arrest and indictment. While it is true that negligence does not weigh as heavily against the state as intentional delay designed to hinder the defense, it nonetheless falls on Perry's side of the speedy trial equation, and weighs against the state. Barker, 407 U.S. at 531, 92 S.Ct. at 2192.
I must part company with my brother Banks in both reasoning and result beginning with the third Barker factor  the defendant's assertion of his right to a speedy trial. I do not deny that a defendant has some responsibility to assert his right to a speedy trial, at least for purposes of the Barker balancing process. In fact, a defendant's complete failure to assert his right to a speedy trial might cost him points where he would otherwise gain points in the analysis. Jaco, 574 So.2d at 632.
However, Barker states that an accused has no obligation to bring himself to trial. Id. 407 U.S. at 527, 92 S.Ct. at 2190. We have repeatedly accepted this principle. Jaco, supra; State v. Ferguson, 576 So.2d 1252 (Miss. 1991); Vickery v. State, 535 So.2d 1371 (Miss. 1988). I note further that the constitutional right to a speedy trial is a fundamental right that may only be waived by the defendant's knowing and intelligent waiver. Jenkins v. State, 607 So.2d 1137 (Miss. 1992), citing Vickery. Therefore, mere failure to assert the right does not permanently waive the right. Id.
In fact, we are required to "indulge every reasonable presumption against waiver." Barker, 407 U.S. at 525, 92 S.Ct. at 2189, quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937). Furthermore, the Barker Court clearly expressed disapproval of following a rigid demand-waiver rule that would require a defendant to make an early demand for trial or be prohibited from claiming the predemand time in his argument that his fundamental right to a speedy trial had been violated. *879 Id. 407 U.S. at 523-530, 92 S.Ct. at 2188-2191. The Court emphasized this in part because some courts had wrongly assumed that delay benefits the accused in all cases, and also because it is clearly the state's burden to bring the accused to trial. Id. The Court further stated that following the demand-waiver approach "is not consistent with the interests of defendants, society, or the Constitution." Id. at 528, 92 S.Ct. at 2190.
What is crucial here is that Perry did not fail to assert his right to a speedy trial  he filed a motion to dismiss claiming that his right to a speedy trial had been violated on June 8, 1990. While Justice Banks recognizes that Perry asserted his right, and the fact that the Barker analysis gives him big points for doing just that, he still maintains that "[t]he trial court was correct in [its] assessment" to weigh this factor against Perry. (Majority opinion at 875-876). Justice Banks relies on Adams v. State, 583 So.2d 165, 169 (Miss. 1991), for the proposition that "a demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial." (Majority opinion at 875).
In my view, Adams was wrongly decided. As shown above, the Supreme Court took great pains to steer us away from setting precedent favoring early, pro forma, demands for trial, while clearly guiding us to approve of, and weigh heavily, a defendant's assertion of his right to a speedy trial. While Perry did not make an early demand for trial, he did file a motion to dismiss based on a violation of his fundamental right to a speedy trial  an obvious assertion of his constitutional right.
Moreover, even if my respected colleagues feel compelled to follow Adams, it is easily distinguishable. In that case the defendant was assisted by counsel for an extended period of time prior to filing his demand for dismissal the same day his trial was scheduled to begin. Here, Perry was granted a 45 day continuance to obtain an attorney on April 13, 1990, sixteen months subsequent to his arrest. (Majority opinion at 874, 875). He then wasted virtually no time asserting his right to a speedy trial. He filed his demand for dismissal on June 8, 1990, only several days beyond the 45 day continuance, and over four months prior to trial. Under the circumstances of this case, Perry should be given credit for asserting his right, and certainly should not have this factor weighed against him.
The Barker case says nothing about when a defendant must make his demand, except for clearly stating that the right to a speedy trial is not conditional on making a demand at all. On the question of how to weigh the defendant's assertion of his right in a particular case, the Barker case says that the balancing test permits us to
attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed.
407 U.S. at 529, 92 S.Ct. at 2191. It is true that Perry was arrested on November 16, 1988, and that he did not assert his right to a speedy trial until June 8, 1990. However, due to an eight month delay attributable to the state involving the lab report, and the state's failure to bring Perry's case in front of the grand jury, the indictment was not returned against Perry until February 28, 1990. Should we now penalize Perry for failing to assert his right to a speedy trial during a period of time that elapsed because of the state's negligence, when the grand jury had not returned a formal indictment against him, and when he had not been appointed counsel? I submit that we absolutely should not.
With regard to the fourth Barker factor, the Fifth Circuit Court of Appeals stated in Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975), that "prejudice is immaterial where consideration of the other three factors ... coalesce in the defendant's favor... ." See also, Ringstaff v. Howard, 861 F.2d 644 (11th Cir.1988). Thus, since the first three factors weigh in Perry's favor, a consideration of the prejudice factor is superfluous.
However, I will nonetheless address the last factor because it too weighs in Perry's *880 favor. We stated in Jenkins, 607 So.2d at 1140:
Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pre-trial incarceration 2) minimization of anxiety and concern of the accused and 3) limitation of the possibility of impairment of defense.
Vickery, 535 So.2d at 1377.
Of great importance is the fact that when it has been established that the delay is presumptively prejudicial, as it has been in this case, the burden of persuasion as to whether the defendant has suffered prejudice, and thus the risk of non-persuasion, falls on the prosecution. Doggett v. U.S., 505 U.S. ___, ___, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992). Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975); U.S. v. Shell, 974 F.2d 1035 (9th Cir.1992).
Justice Banks concludes that since the delay negligently caused by the state in this case is not as protracted as the delay caused by the government in Doggett, Perry cannot prevail short of proving particularized prejudice to his defense. In my view, Justice Banks places too much emphasis on this one aspect of the three pronged prejudice factor. Also, my brother Banks fails to properly focus on the fact that the burden falls squarely on the state to prove that Perry's case has not been prejudiced.
I agree that Perry did not effectively show that his defense has been impaired by the delay. However, short of rebutting Perry's argument that he would now be subject to an habitual offender indictment  a showing he was never required to make, the state has not persuasively rebutted what we must presume; namely, that when there has been excessive delay, the reliability of the trial has been compromised. Doggett, 505 U.S. at ___, 112 S.Ct. at 2693. I recognize that this delay is not as long as the delay in Doggett; however, that only means this factor weighs less heavily in Perry's favor. Justice Banks correctly states that the weight to be accorded to this factor increases with the length of the delay caused by the state's negligence. That, however, does not mean this factor weighs against Perry simply because the delay in his case is not as protracted as the delay in Doggett  that is, this factor must still be weighed in his favor.
Furthermore, while I cannot argue that Perry has been subjected to oppressive pre-trial incarceration, the government has completely failed to persuasively rebut the presumption that Perry suffered anxiety and concern during the time the state mishandled his case. It is reasonable to conclude that Perry did suffer this type of personal prejudice, and absent a showing by the state to the contrary, we are required to presume that he did. See Beavers v. State, 498 So.2d 788, 792 (Miss. 1986) (speedy trial right abridged by 432 day delay accompanied by little evidence of prejudice in the record). Again, this factor clearly weighs in Perry's favor.
Because all four Barker factors weigh in Perry's favor, I would hold that his constitutional right to a speedy trial has been denied. Accordingly, I dissent from Justice Banks' opinion to the contrary.