SOUTHWICK, J.,
for the Court:
¶ 1. Brian F. Hogan was convicted by a Forrest County Circuit Court jury of armed robbery. On appeal Hogan argues that there was a speedy trial violation, that his confession was inadmissible, and that all the elements of armed robbery were not proven. We find no merit to these issues and therefore affirm the judgment.
FACTS
¶ 2. On November 23, 1995, Brian F. Hogan entered a Stop-n-Save convenience store in Hattiesburg. After selecting a soft drink from the cooler in the rear of the store, Hogan approached the cashier, Wanda Kitchens. When Kitchens opened the register, Hogan pulled a .38 revolver from his waistband and demanded the money from the register. Kitchens backed away and Hogan took the money from the register himself. Approximately $465 in cash and checks was taken.
¶ 3. As Hogan was fleeing the scene, Kitchens telephoned the police. She reported the license number of Hogan’s ear, which she described as a blue Cadillac. Various law enforcement officers participated in the apprehension, which included an unsuccessful roadblock and a high speed chase. Finally Hogan sideswiped a tree after a sharp turn and crashed into a parked car.
¶ 4. Officer Michael Nobles walked up to Hogan’s wrecked vehicle and ordered him to get out with his hands up. Hogan exited the car but did not raise his hands. Instead, he lunged at the officer, who then struck Hogan on the head with the butt of his revolver. Hogan suffered a laceration on the top of his head. He was taken to Forrest General Hospital, where he was treated and released. He was then taken to the Hattiesburg Police Department and almost immediately admitted his guilt.
¶ 5. Hogan was charged with armed robbery. On January 21, 1997, a jury in the Circuit Court of Forrest County found Hogan guilty but was unable to fix the penalty at life imprisonment. The judge then sentenced Hogan to 35 years in the custody of the Mississippi Department of Corrections.
DISCUSSION

I. Speedy Trial

¶ 6. Hogan alleges that the trial court erred in denying his motion for dismissal for failure to provide a speedy trial. He asserts that the substantial period of time between his arrest, indictment, arraignment, and trial violated his Sixth Amendment right to a speedy trial.
¶ 7. The United States Supreme Court has provided the standard to review a claimed denial of the constitutional right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Four factors must be considered: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right, and (4) whether the defendant was prejudiced by the delay. Id. at 530-32, 92 S.Ct. 2182.

1. Length of the delay

¶ 8. The constitutional right to a speedy trial attaches at the time a person is arrested. Smith v. State, 550 So.2d 406, 408 (Miss.1989). A delay of at least eight months is presumptively prejudicial. Jaco v. State, 574 So.2d 625, 630 (Miss.1990). Fourteen months elapsed from the time of Hogan’s arrest until his trial. We presume prejudice and proceed with the remainder of the analysis.

*97
2. Reason for tke delay

¶ 9. Once a delay of over eight months occurs, the prosecutor must produce evidence justifying the delay. State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991).
¶ 10. The first four months of the delay between arrest and indictment was explained as attributable to normal court delays, including awaiting the next term of court at which a grand jury could be convened. No proof of the scheduling of grand juries was introduced, but the assertion was made. Where the reason for the delay is overcrowded dockets and understaffed prosecutors, this factor will not be weighed heavily against the State. McGhee v. State, 657 So.2d 799, 802 (Miss.1995). If normal and reasonable scheduling of grand juries builds in certain necessary delays, that too does not weigh strongly against the State. Hogan did not attempt to prove that the prosecutor’s assertion was unsubstantiated, and the trial judge accepted it.
¶ 11. The State then explained that plea negotiations occurred from the date of indictment through August 1996. Such negotiations have been found acceptable explanations for trial delay. Johnson v. State, 666 So.2d 784, 792 (Miss.1995). The assistant district attorney stated that negotiations ended in August and on August 14, a motion to set the case for trial in November was made. That was the first available trial date. The prosecutor then explained, and no disagreement came from Hogan’s attorney, that a continuance was granted in November at the request of the defense.
¶ 12. The court accepted these reasons. There is every indication that the State moved with reasonable dispatch and that valid reasons existed for the various time periods explaining the delay. This factor does not weigh against the State.

8. Defendant’s assertion of his right

¶ 13. An accused certainly is under no duty to cause his own trial. However, one of the four Barker factors will weigh in his favor if in fact he has asserted his right to a speedy trial and put the court on notice of his demand. Perry v. State, 637 So.2d 871, 875 (Miss.1994).
¶ 14. Hogan asserted a violation of his speedy trial right several times in fairly close succession. On September 3,1996, he filed a motion to dismiss in which he stated that “the 6th Amendment to the United States constitution established a fundamental right to a speedy trial....” He next asserted his right on October 21, 1996, when he filed his motion for a fast and speedy trial. He again raised his right to a speedy trial in the motion to quash indictment which he filed on November 1, 1996, and alluded to it in his motions for dismissal of counsel and appointment of counsel filed that same day. The September 3 motion to dismiss was also refiled on November 1,1996. Finally, on January 15, 1997, Hogan filed another motion to dismiss. Trial began six days later.
¶ 15. The supreme court has made an important distinction under this factor, finding that a “demand for dismissal for violation of the right to a speedy trial is not the equivalent of a demand for speedy trial. Such a motion seeks discharge not trial.” Perry, 637 So.2d at 875. The court held that a demand for dismissal coupled with a demand for an instant trial was insufficient to weigh this factor in favor of the defendant, where the motion came after most of the period of delay had elapsed. Id. Although Hogan’s various motions for dismissal were not sufficient to assert his speedy trial right, he did file a motion for speedy trial on October 21. However, he filed this motion three months before his trial and one month later agreed to a continuance in order for his new attorney to prepare for trial. By agreeing to the continuance, Hogan agreed that he would not be entitled to an immediate trial. Consequently, we find that this factor to be of negligible weight.
J. Prejudice caused by the delay
¶ 16. The fourth part of the analysis looks at the actual prejudice to the defendant from two perspectives. First, there is a possibility of prejudice arising from delay itself, including lost witnesses and evidence, dimmed memories, and other similar complications that affect the reliability of the fact-finding. *98 Skaggs v. State, 676 So.2d 897, 901 (Miss.1996). Second, the defendant may suffer because of the restraints to his liberty. “[W]holly aside from possible prejudice to a defense on the merits, [delay] may ‘seriously interfere with the defendant’s liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.’ ” Atterberry v. State, 667 So.2d 622, 627 (Miss.1995). That being said, still the court has held that “[i]ncarceration alone is not enough prejudice to warrant reversal.” Williamson v. State, 512 So.2d 868, 877 (Miss.1987).
¶ 17. Although Hogan was incarcerated for the 427 days leading up to his trial, he alleges no actual harm to his defense. “[I]f the defendant fails to make a showing of actual prejudice to his defense, this prong of the balancing test cannot weigh heavily in his favor.” Polk v. State, 612 So.2d 381, 387 (Miss.1992).
¶ 18. After reviewing all of the factors, we find that the trial court did not improperly dismiss the speedy trial claim. The reasons for the delay were valid, the assertion of the right only occurred near the time of the trial, and there was no showing of actual prejudice.

II. Admissibility of confession

¶ 19. Hogan next contends that the trial court erred in admitting a confession that he gave fourteen minutes after he was released from the hospital. Hogan had lunged at the arresting officer, who deflected the attack by hitting Hogan on the head with a pistol. Hogan then received treatment for the head injury and soon after his release gave the confession. Hogan argues that he was incapable of giving a voluntary statement so soon after medical treatment. In addition, Hogan claims that the State failed to present all the witnesses who could testify as to involuntariness.

A. Voluntariness of confession soon after medical treatment

¶ 20. At the hearing to determine the admissibility of Hogan’s confession, Detective Danny Rigel testified that he was present during the interrogation of Hogan. Although Hogan had just been released from the hospital, according to Rigel he was coherent and appeared to understand his rights. Rigel stated that Hogan was given his Miranda warnings and executed a waiver.
¶ 21. Hogan did not testify nor did he call any witnesses. He argued that by being struck on the head he was not able to make a voluntary waiver of his rights. The supreme court has previously rejected any per se rule that if the defendant was in pain during the interrogation, his confession is involuntary. Wheeler v. State, 536 So.2d 1347, 1349 (Miss.1988). In one case, the defendant was interrogated during his hospitalization for treatment of a head injury. Gavin v. State, 473 So.2d 952, 955 (Miss.1985). The court ruled that his confession was voluntary, as although he experienced discomfort and pain, he was given his Miranda warnings, subsequently read over the statement, and signed it. Additionally, the court noted that “[t]he record is devoid of evidence that [the defendant] was under any sedative or medication that would impair his memory or his ability to voluntarily waive his Miranda rights.” Id.
¶22. After receiving several staples to close his head wound, Hogan undoubtedly experienced some discomfort and pain. However, the officers present during the interrogation testified that Hogan was coherent and that his confession was given without threats, coercion, or promise of reward. Moreover, medical records show that Hogan’s wound was classified as “non-urgent” and he received no medication or sedatives. Therefore, we find that his confession was voluntary.

B. Agee violation

¶ 23. A separate argument is made that once Hogan challenged the voluntariness of the confession, the State was obligated to present as witnesses all the individuals who observed the confession. Cited is Agee v. State, 185 So.2d 671 (Miss.1966). That case held that if the defendant offers evidence that his confession was the result of threats, violence, or promises of reward, all the witnesses must either testify or have their ab *99 sence explained. Id. at 673. Agee was decided before the rights warnings became mandatory, but the Agee principle has been reaffirmed as recently as in Underwood v. State, 708 So.2d 18, 30 (Miss.1998).
¶ 24. The only necessary response is that Hogan never put on evidence sufficient to invoke the Agee evidentiary rule. It is true that he challenged the voluntariness of his confession, but on the basis that his recent medical treatment made it impossible for him to make a reasoned waiver of his rights. There was no allegation that threats or promises induced his confession. When misconduct of a law enforcement officer is alleged, the “every witness” rule gives the court as complete an explanation as is available from other officers and observers of what happened. The rule is inapplicable here.
¶ 25. On the question of whether Hogan was too groggy or otherwise incapable of consenting to a statement, the State “has the burden of proving the voluntariness of a confession. This burden is met by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. This makes out a prima facie case for the State on the question of voluntariness.” Chase v. State, 645 So.2d 829, 838-39 (Miss.1994). The State made this prima facie showing through the testimony of Officer Rigel. The defense offered no explicit evidence of coercion, though on appeal Hogan apparently claims that he did in fact offer evidence of coercion.
¶ 26. A review of the transcript of a pretrial hearing indicates that the trial court asked the defendant whether he wished to present any of his pro se motions. Hogan asked to argue a habeas corpus petition. During the hearing on that motion, Hogan testified that a detective other than Rigel “told me everything that happened, and then he asked me what happened and made some promises to make some kind of deal that would implicate that I wouldn’t get but five years.” Apparently, the detective to whom Hogan referred was Richard Cox, who met Hogan at the hospital and was present during his interrogation at the police station. Exactly what relief Hogan was seeking from this testimony is unclear, but it was not to suppress the confession. There was no evidence that tied the alleged plea offer with the resulting confession. It is not evident when Detective Cox allegedly made the statement about a five year sentence. In fact, Hogan testified that he was not interested in a plea and did not allege that his confession followed a possible offer of a plea. Hogan then proceeded at the hearing to discuss the speedy trial issue that we have already addressed.
¶ 27. When the motion to suppress the confession was actually considered, there was no testimony or other evidence that Hogan had made a statement after promises or inducements, threats or violence. To argue on appeal a violation of the Agee evidentiary rule (every witness must be presented who heard a confession), Hogan needed to challenge the confession on the basis of coercion or other improper inducement. That he failed to do. The isolated statement in an earlier hearing on a pro se habeas petition, neither procedurally nor factually tied to his arguments about the confession, is insufficient. We will not reverse the judgment of a trial court on matters not presented to him. Underwood v. State, 708 So.2d at 26.

III. Elements of Armed Robbery

¶28. Finally, Hogan argues that the State failed to prove the three essential elements of armed robbery. The supreme court has held that the elements of robbery are felonious intent, force or putting in fear, and carrying away the property of another as a result of the force or fear. Glenn v. State, 439 So.2d 678, 680 (Miss.1983). “[A]ll these elements must occur in point of time ... If putting in fear is relied upon, it must be the fear under duress of which the owner parts with possession.” Register v. State, 232 Miss. 128, 132, 97 So.2d 919, 921 (1957).
¶ 29. Apparently accepting the proof of intent, Hogan focuses on “fear” and “taking away.” Hogan alleges that the State failed to prove that the property of the victim, Kitchens, was taken as a result of her fear of the defendant. He contends that *100 because Kitchens phoned the police as he drove away, she obviously was not afraid. Moreover, she never testified that she feared serious bodily injury. However, the “fear contemplated by the statute does not require the victim to be frightened or terrified. It is quite sufficient if he expects or anticipates that personal injury may result ... if he does not abide by the instructions of the assailant, who is threatening the use of a deadly weapon.” Harper v. State, 434 So.2d 1367, 1368 (Miss.1983).
¶30. Kitchens testified that when Hogan pointed a .38 revolver at her, she panicked and backed away from the register. At that point, Hogan leaned over the counter and took the money himself. Additionally, Kitchen testified that she was “in fear” and that Hogan kept the gun pointed at her the entire time. This is “fear” for purposes of robbery.
¶31. Hogan’s final argument is that because the cash and checks from the robbery were never recovered, the State failed to prove that they were in fact “taken and carried away” by him. Even so, there was ample evidence that Hogan did “take and carry away” the cash and checks from the convenience store. Kitchens, the store clerk, testified that Hogan took the money from the register and fled the scene. Moreover, Hogan himself admitted taking the cash and checks and stated that he tossed both out of his car window during the chase. That is sufficient.
¶ 32. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO FORREST COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.