# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-KP-01038-COA

**STEVEN RAY A/K/A STEVEN J. RAY**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 06/14/2000 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN DUGGAN, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | ED PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | COUNT I- MANUFACTURE METHAMPHETAMINE: SENTENCED TO 20 YEARS; SHALL RUN CONSECUTIVELY WITH COUNTS II AND III; COUNT II-POSSESSION METHAMPHETAMINE: SENTENCED TO 5 YEARS; COUNT III- POSSESSION OF COCAINE: SENTENCED TO 5 YEARS; SHALL RUN CONSECUTIVELY WITH COUNTS I AND II |
| DISPOSITION: | AFFIRMED - 05/21/2002 |
| MOTION FOR REHEARING FILED: | 6/7/2002; denied 8/6/2002 |
| CERTIORARI FILED: | 9/6/2002; denied 10/17/2002 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., BRIDGES, AND IRVING, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. Steven Ray has appealed his conviction on three counts of drug-related offenses. In the initial brief filed with this Court, Ray, through counsel, raises two issues. Ray later sought and was granted permission to discharge his attorney and proceed with this appeal pro se. He thereupon filed a supplemental brief raising two additional issues. We find no merit in any of the issues and, for that reason, affirm the convictions.

# I.

## Facts

¶2. Ray was under police surveillance as a suspect in drug-related activities. Undercover officers following Ray observed him driving erratically and, once he stopped, proceeded to approach Ray's pickup truck to investigate further. Officer Richard Nations testified that, as he walked to the truck, he observed certain items, including surgical tubing of the type known to be used in the illegal manufacture of methamphetamine, in plain view in the back of the truck. Officer Nations also said that he observed Ray sitting in the driver's seat of the truck with a hypodermic syringe in his hand which he attempted to conceal as the officer approached. According to Officer Nations, the syringe appeared to have a brown residue that was consistent with the presence of methamphetamine.

¶3. On those facts, Ray was placed under arrest for possession of drug paraphernalia. The truck was, at the time, parked on a public street and the officers concluded that it would have to be impounded. As a part of that process, the officers began an inventory search of the truck. That search produced a quantity of substance later proven to be cocaine and additional equipment of the type typically used to manufacture methamphetamine.

¶4. On the strength of these discoveries, the officers obtained a search warrant for Ray's home and that search produced additional evidence implicating Ray in the manufacture of illegal narcotics. He was indicted on a charge of manufacture of methamphetamine, one of possession of methamphetamine, and one count of possession of cocaine. The jury found Ray guilty and this appeal followed, in which Ray raises the following issues: (1) the trial court erred in not suppressing all evidence found in Ray's truck since it was the product of an unreasonable search prohibited by the United States Constitution; (2) the trial court erred in allowing the jury to hear unfairly prejudicial evidence concerning Ray's brother's involvement in drug activity; (3) there was no probable cause for a search warrant to issue for Ray's residence; and (4) the trial court erred in granting a circumstantial evidence instruction.

¶5. Ray also raises the issue of denial of a speedy trial in his supplemental brief, though for reasons not entirely clear, he includes that as a part of Issue IV concerning the circumstantial evidence instruction. We will treat the speedy trial claim as a separate issue.

# II.

## Unreasonable Search

¶6. The Fourth Amendment to the United States Constitution protects an individual from unreasonable searches. That protection is normally afforded by the requirement that, prior to undertaking such a search, the investigating officers go before a disinterested magistrate and obtain a search warrant upon a showing of probable cause for the warrant to issue. *Petti v. State*, 666 So. 2d 754, 757 (Miss. 1995).

¶7. However, in recognition that there are special circumstances in which obtaining a warrant is impractical or likely to substantially hinder the efficient operation of the investigatory efforts of law enforcement officials, the law permits warrantless searches in specific situations. *Blissett v. State*, 754 So. 2d 1242, 1245 (¶15) (Miss. 2000). One of those situations is where the occupant of a motor vehicle is being arrested and, because of the location of the vehicle, it appears necessary to impound the vehicle to protect the vehicle and its contents. *Franklin v. State*, 587 So. 2d 905, 907 (Miss. 1991). In that specific instance, the United

States Supreme Court has indicated that a search of the vehicle is reasonable for the purpose of itemizing the contents in order to protect the impounding officers from subsequent accusations that certain contents are unaccounted for. *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976).

¶8. In this case, there was evidence that the officer observed Ray in possession of a hypodermic syringe. Rather than attempting to offer an explanation for this rather unusual circumstance, Ray was further seen engaged in an apparent attempt to conceal the syringe as the officer approached. We conclude that these facts constituted probable cause to arrest Ray for possession of drug paraphernalia. Much of Ray's argument consists in contesting the point of whether mere possession of a syringe would be sufficient to convict of the crime. Possession of drug paraphernalia is, to some extent, an unusual crime due to the fact that it criminalizes the possession of certain materials that, in and of themselves, may be innocent in character and widely available for legitimate purchase. It is the combination of the possession of the article, its possible use in connection with illicit drug activity, and the dubious circumstances in which the defendant is found in possession of the article that combine to give rise to criminal sanctions.

¶9. These are matters that, at a trial of the charges, may be explored in some depth in order for the jury to reach an informed conclusion as to whether the requisite combination of factors has been proven beyond a reasonable doubt. However, the determination of whether probable cause to arrest for that same crime exists, a decision that in circumstances such as appear in this case must be made in rapid order and based on sketchy evidence, is a different matter. Had Ray not attempted to conceal the syringe or had he promptly offered a plausible explanation for possessing such an item, then different considerations raised by those facts might weigh against the existence of probable cause for the officer to proceed further. That simply is not the circumstance that we face. Rather, we are satisfied that the officers did have probable cause to arrest Ray for possession of drug-related paraphernalia.

¶10. Once the decision to arrest was made, the officers were necessarily faced with the matter of Ray's vehicle. Because it was on a public street, away from Ray's residence, and because there was no other person to whom the possession of the vehicle could be entrusted, the officers were acting within their authority to impound the vehicle and, as a part of that process, to conduct an inventory search of the vehicle's contents. *Id*. at 371. Any contraband discovered as a part of that constitutionally-sanctioned search would subsequently be admissible in any court proceeding where proof of its existence was a legitimate issue for determination. The trial court did not err in failing to exclude any evidence obtained in the search of Ray's vehicle.

### III.

### Prejudicial Effect of Evidence Concerning Ray's Brother

¶11. The State introduced evidence that, shortly after Ray's arrest and while investigating officers were attempting to obtain a search warrant for Ray's residence, they placed the residence under surveillance. The officer conducting the surveillance testified to seeing Ray's brother hurriedly depart the house carrying a blue cooler. The officer followed the vehicle and observed the brother throw a number of articles out onto the street and the adjoining yards. Much of that material was retrieved and, upon being identified as items useful in the manufacture of methamphetamine, was introduced into evidence over Ray's objection that it was not relevant.

¶12. Now, on appeal, Ray argues that this was error because there was no showing of Ray's knowledge of,

or participation in, his brother's activities.

¶13. The trial court enjoys substantial discretion in ruling on the admissibility of evidence at trial. *McIlwain v. State*, 700 So. 2d 586, 590 (Miss. 1997). Even if erroneous rulings are made, they will not serve as the basis for a new trial unless they appear to have affected a "substantial right of the [complaining] party." M.R.E. 103(a); *Hoover v. State*, 552 So. 2d 834, 840 (Miss. 1989).

¶14. The evidence showed that Ray and his brother shared the same house. At the time the brother was seen hastily departing the house with items that he shortly thereafter threw from a moving vehicle, the officers were seeking to obtain a search warrant to search those premises. That effort was successful and the officers did, in fact, conduct a search of the premises and numerous incriminating items were seized and subsequently introduced into evidence at trial.

¶15. On these facts, the jury could properly conclude that, but for the brother's flight and failed attempt to dispose of incriminating evidence, that same evidence would have been discovered in the course of the search of the residence. Its admissibility, in that circumstance, would seem to be governed by the same considerations that control the admissibility of items actually recovered from the house.

¶16. The only possible prejudice to Ray is the fact that the jury was able to hear evidence of his brother's activities that would indicate his own complicity in Ray's illegal activities. He argues that the probative value of the evidence in this circumstance is substantially outweighed by the prejudice arising from injecting the brother's suspicious actions into the trial. M.R.E. 403. Because we find the evidence admissible to the same extent as was evidence actually seized from the house, we think it was appropriate - and even necessary - for the State to show the circumstances under which the evidence was obtained so that the jury could understand that this evidence was, in all likelihood, kept in the house and, thus, subject to Ray's constructive possession. Inevitably, this proof, necessary to show the probative value of the evidence, put before the jury the suspicious conduct of Ray's brother, which we will concede had the potential to be prejudicial to Ray, or, at the least, serve to confuse the jury - both of which concerns are potentially dealt within Rule 403. Nevertheless, we think that the probative value of the underlying physical evidence was such that it was not outweighed by the potential prejudice or confusion arising out of informing the jury as too exactly how the evidence was obtained. There was, therefore, no error in admitting it. We observe that evidence admissible for a limited purpose may properly be the subject of an instruction to the jury informing it of the restricted use it may properly make of the evidence. M.R.E. 105; *Smith v. State*, 656 So. 2d 95, 99-100 (Miss. 1995). The trial court specifically mentioned the possibility of such a limiting objection when ruling on defense counsel's objection, and, in fact, such a limiting instruction was given. The jury is presumed to follow the instructions given it. *Ragin v. State*, 724 So. 2d 901, 904 (¶13) (Miss. 1998). There was no reversible error in the handling of this evidence.

## IV.

### Probable Cause of Search Warrant

¶17. Ray contends in his supplemental brief filed pro se that there was no probable cause for issuance of a search warrant for his residence. The strength of his argument relies entirely on the contention that there was no probable cause to arrest him and, as a part of the arrest, obtain evidence of his criminal activity from his vehicle, since it was the discovery of this evidence that provided ammunition to seek the search warrant.

¶18. We have already determined, in the discussion of Issue II, that the search of Ray's vehicle and the seizure of contraband discovered in that search was constitutionally permissible. There can be no legitimate dispute that this evidence, directly implicating Ray in both the possession and manufacture of illegal narcotic substances, provided ample probable cause for the issuance of a search warrant for his residence.

## V.

### Circumstantial Evidence Instruction

¶19. The Court, in instructing the jury on the elements of manufacture of illicit drugs, issued the following instruction now the subject of Ray's complaint:

> The court instructs the jury that if you believe from all of the evidence, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, that the defendant, Steven J. Ray, did, on or about February 25, 1999, in the First Judicial District of Hinds County, Mississippi, wilfully, unlawfully, knowingly and feloniously manufacture methamphetamine, then and in that event, you must find the defendant Steven J. Ray, guilty as charged as to Count 1.

> Should the State fail to prove any of the above elements, you should find the defendant not guilty as to Count 1.

¶20. Ray, in the pro se portion of this appeal, asserts that this instruction was confusing and vague. No objection to the instruction was interposed at trial. In the interest of judicial economy, the law requires such objections to be raised in a timely manner that would permit the trial court, were it to conclude the objection had merit, to remedy the situation before the jury was actually instructed. Embodied in that concept is the notion that such objections, even if meritorious, may not be raised for the first time at the appellate level. *Douglas v. Blackmon*, 759 So. 2d 1217, 1220 (¶ 9) (Miss. 2000). We find this issue procedurally barred from consideration on this basis.

¶21. Additionally, we observe that Ray's pro se argument in support of this issue is, in fact, nothing more than an attack on the sufficiency of the State's evidence in which he contends that the proof regarding his involvement in manufacture did not rule out what he contends is an equally reasonable alternate interpretation of the evidence, which is that he had no involvement in the activity. Issues not properly briefed and supported by logical argument and, where appropriate, citation to relevant authority will not normally be considered. *Hoops v. State*, 681 So. 2d 521, 535 (Miss. 1996).

¶22. Finding either of these alternative reasons sufficient to disregard this alleged error, we decline Ray's request for relief on this basis.

## VI.

### Speedy Trial Issue

¶23. Ray apparently filed a pro se speedy trial motion sometime prior to his trial, though the motion does not appear in the clerk's papers made a part of the record in this appeal. Just prior to trial, Ray's counsel raised the issue of the motion. The trial court heard legal argument from both sides, but received no evidence relating to the motion. After hearing argument, the court denied the motion without making any supporting findings of fact.

¶24. Ray now urges this denial of relief based on a violation of his speedy trial rights to be error requiring reversal of his conviction. Because no evidentiary hearing was conducted and the trial court made no findings to support the denial of relief, we find ourselves substantially handicapped in our analysis. The only pertinent facts that can be gathered from our own independent review of the record is that Ray was arrested on February 25, 1999, and his trial commenced on June 12, 2000.

¶25. Though there are some remarks in the record by counsel as to the date Ray might have been arraigned on these charges, there is no evidence before this Court establishing that date. Comments by counsel do not serve as a substitute for evidence. *Brewer v. State*, 725 So. 2d 106, 131 (¶131) (Miss. 1998). Ray purports to raise both statutory and constitutional speedy trial violations in his brief; however, statutory speedy trial claims are measured from date of arraignment. Miss. Code Ann. § 99-17-1 (Rev. 2000). It was Ray's burden, as the movant, to produce some evidence supporting his claim for relief. *Duplantis v. State*, 708 So. 2d, 1327, 1335 (¶ 22) (Miss. 1998). His failure to produce evidence of his arraignment date prevents this Court from determining whether a 270-day violation under the statute occurred. We are, therefore, unable to afford Ray any relief on his statutory claim.

¶26. A constitutional claim, on the other hand, is computed from the time of arrest to the time of trial. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). The Mississippi Supreme Court has said that a delay of over eight months is presumptively prejudicial, requiring a more detailed analysis of the factors set out in *Barker. Id.*; *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The factors to be considered in *Barker* are four in number: (1) length of delay, (2) reason for the delay, (3) assertion of right to speedy trial by defendant, and (4) prejudice arising to the defendant. *Id.*; *Bailey v. State*, 463 So. 2d 1059, 1062 (Miss. 1985).

¶27. On the record now before us, the only things we know with any certainty are (a) the length of the delay - a period of approximately 16 months, and (b) whether the defendant asserted his speedy trial demand in a timely manner. From the record, it does not appear that Ray pursued his claim formally before the actual day of trial, despite the unsubstantiated assertions of trial counsel during the hearing.

¶28. No reason or reasons for the delay can be discerned from evidence in the record. In the absence of any explanation offered by the State, all the time from arrest to trial must be assessed against the State. *Perry v. State*, 419 So. 2d 194, 199 (Miss. 1982).

¶29. As to the final factor, the Mississippi Supreme Court has said that prejudice to the defendant will not be presumed merely from the passage of time. *Perry v. State*, 637 So. 2d 871, 876 (Miss. 1994). Rather, the obligation to show some actual prejudice continues to remain the obligation of the defendant. *Id.* Ray made no evidentiary showing of any of the traditional indications of prejudice, such as prolonged pre-trial incarceration, loss of opportunity for employment, unavailability of witnesses or evidence due to the inordinate delay, or evidence of his emotional distress over the pending charges. *Taylor v. State*, 672 So. 2d 1246, 1261 (Miss. 1996).

¶30. Based on what little relevant information this Court was able to glean from the record in this case, we are not persuaded that Ray was successful in showing his entitlement to relief because of the State's failure to bring him to trial in a more expeditious fashion after his February 1999 arrest. We, therefore, decline to afford him any relief on this basis.

¶31. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION ON COUNT I FOR THE MANUFACTURE OF METHAMPHETAMINE AND SENTENCE**

OF TWENTY YEARS, COUNT II FOR THE POSSESSION OF METHAMPHETAMINE AND SENTENCE OF FIVE YEARS, AND COUNT III FOR THE POSSESSION OF COCAINE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL SENTENCES ARE TO RUN CONSECUTIVELY. COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.

KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.