741 So.2d 318 (1999)
Edward Eugene BIGGS a/k/a `Gene', Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01112-COA.
Court of Appeals of Mississippi.
April 20, 1999.
Rehearing Denied June 22, 1999.
Certiorari Denied September 23, 1999.
*321 Thomas E. Royals, Cynthia Ann Stewart, Jackson, Attorneys for Appellant.
*322 Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Edward Eugene Biggs was convicted of burglary, kidnapping, sexual battery, and capital murder. He appeals his conviction, arguing (1) he suffered prejudice due to the fact that the jury saw him being led to and from the courthouse in shackles, (2) his involuntary statement was improperly allowed into evidence, (3) the trial court erred in admitting gruesome and prejudicial photographs of the victim and the crime scene, (4) the trial court erred in refusing his jury instructions which set forth the theory of duress, (5) he was denied a speedy trial, (6) the trial court improperly excluded as evidence the sentencing order entered in his codefendant's case, and (7) the trial court erred in allowing him to be transferred from the youth court and tried as an adult on the burglary charge.
¶ 2. We reject these arguments and affirm.

FACTS
¶ 3. On June 15, 1993, fifteen-year old Edward Eugene Biggs and his friend, fourteen-year old David Tagert, were exploring old logging trails in the woods near their homes in rural Simpson County. Each used knives to clear paths through the woods. On their way home, they stopped at the nearby home of twenty-six year old Katie Middleton. They knocked on her door. When she answered, they forced their way into her home. They then carried her to the bedroom where she was bound and gagged. She was blindfolded and an electrical cord was tied around her neck. Middleton was then sodomized and repeatedly struck in the head with a lamp. She was stabbed eight times in the face and suffered eight more stab wounds to the chest.
¶ 4. Biggs and Tagert then took the contents of Middleton's purse and drove her car until they ran out of cash and gas. They stopped at a convenience store in Independence, Louisiana, where Biggs phoned his mother and told her what had happened. Following her instructions, he entered the store and asked the store owner to telephone the police because his friend had "murdered a woman in Mississippi." The store owner called the police, and both Biggs and Tagert were taken to the police station for questioning.
¶ 5. At the police station, Biggs gave a statement in which he described his participation in the crimes. Biggs was subsequently indicted by a Simpson County grand jury for burglary, kidnapping, sexual battery, and capital murder. Because he was a minor at the time of the incident, a transfer hearing was held in the youth court as to the non-capital offenses of burglary and sexual battery. After a finding of probable cause and no reasonable prospects of rehabilitation within the juvenile justice system, Biggs's case was transferred to the Simpson County grand jury where he was subsequently re-indicted on all four counts.
¶ 6. Biggs was tried in the Jasper County Circuit Court on change of venue from Simpson County. He was convicted of burglary and the kidnapping, sexual battery, and capital murder of Katie Middleton. Biggs received a sentence of fifteen years for burglary, to run concurrently with the thirty-year sentence imposed for sexual battery, but to run consecutively with the life sentences received for kidnapping and capital murder.

DISCUSSION

I. Prejudicial effect of jury viewing defendant in shackles
¶ 7. Biggs argues that as he was being led to and from the courthouse, the jury saw him in shackles. An affidavit from a witness attests that after court had recessed for the day, the jury was boarding *323 a van. Biggs, no more than six feet away, was led past them with his hands shackled. He argues that this constituted prejudice, as the jury was left with the impression that he was clearly in custody and not free on bond. As a result, he asserts that he is entitled to a reversal.
¶ 8. There "is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner...." Wiley v. State, 582 So.2d 1008, 1013 (Miss.1991) (emphasis added). This principal was applied in a factually analogous case in which the defendant complained that the jury saw him as he was being transported outside the courthouse and downstairs in the courthouse. Davenport v. State, 662 So.2d 629, 633 (Miss.1995). Because the defendant did not allege that he was ever seen in the courtroom while in shackles, the court found no prejudice. Id.
¶ 9. Biggs also never alleged, much less proved, that the jury saw him in the courtroom. Though prosecutors and security personnel should be cautious to avoid permitting jurors ever to see an accused in shackles before the case has concluded, we find no prejudice in this case.

II. Voluntariness of confession
¶ 10. After the convenience store owner telephoned the police at Biggs's request, both Biggs and Tagert were taken to the Independence, Louisiana police station for further questioning. Biggs's father soon arrived and was present when his son was advised of his constitutional rights. Both Biggs and his father signed the waiver of rights form. Biggs and his father were then allowed twenty-five to thirty minutes alone before Biggs was interrogated. The audio tape of the confession was allowed into evidence at trial.
¶ 11. The trial court overruled a motion to suppress the confession. That decision is both a legal but also a highly fact-based analysis of the voluntariness. We will reverse a finding of voluntariness only for manifest error or for ignoring the overwhelming weight of the evidence. McGowan v. State, 706 So.2d 231, 235 (Miss.1997).

A. Validity of waiver
¶ 12. Biggs first contends that he was questioned before he had received warnings regarding his constitutional rights. This allegation is based on the questioning of Biggs at the convenience store by a Louisiana officer. Biggs was not in custody at the time. He had requested that the store clerk call police. There is no requirement that warnings be given during general on the scene questioning. Voluntary statements likewise are not invalidated by the absence of warnings. Hunt v. State, 687 So.2d 1154, 1159 (Miss.1996).
¶ 13. Biggs further alleges that any waiver which he may have given was invalid because it was not knowingly, intelligently, and voluntarily given. He points to his age and IQ of 92 as evidence of his inability to understand his rights and to waive them. These are facts that can be considered in a review of the totality of the circumstances surrounding statements made during interrogation of a juvenile. Foster v. State, 639 So.2d 1263, 1280 (Miss. 1994). The United States Supreme Court has noted that the "totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved." Id. at 1280-81. Yet this is not just a consideration for juveniles, as the mental deficiencies of any suspect are among the factors to weigh regarding whether a confession was knowing, intelligent and voluntary. McGowan v. State, 706 So.2d 231, 235 (Miss.1997).
¶ 14. Biggs's IQ of 92 is higher than that of several individuals whose confessions *324 have been held voluntary and admissible. See McGowan v. State, 706 So.2d at 236 (confession admissible; defendant's IQ was 55); Gator v. State, 402 So.2d 316 (Miss. 1981) (confession admissible; defendant's IQ was between 43 and 70); Hancock v. State, 299 So.2d 188 (Miss.1974) (confession admissible; defendant had an IQ of 87 and was considered "dull normal"). Biggs's own expert testified that 92 is a low average IQ. The police officer who advised Biggs of his rights and took his statement testified that Biggs understood his rights and voluntarily waived them. No threats, promises of leniency, or coercion were used. Biggs's father was present when his son was advised of his rights. In fact, Biggs's father signed the waiver along with his son.
¶ 15. We must rely significantly on the trial court's determination regarding mental capacity to understand the warning. As the fact-finder, the trial judge viewed the defendant and analyzed his ability to understand the warnings. This is a fact-finding and will not be disturbed unless we find manifest error. McGowan v. State, 706 So.2d at 236.
¶ 16. In the present case, the judge found that Biggs was capable of understanding the warnings and that his statement was voluntarily, knowingly, and intelligently given. We find that the trial court's determination of the admissibility of Biggs's statement was neither manifestly in error nor contrary to the overwhelming weight of the evidence.

B. Warrantless arrest without probable cause
¶ 17. Next, Biggs argues that any waiver that he may have given was the product of an illegal arrest. He claims that when he was taken from the convenience store to the police station, he was under arrest. An arrest occurs for these purposes when a person is being held to answer for a suspected crime. Blue v. State, 674 So.2d 1184, 1202 (Miss.1996). The voluntary accompaniment of an officer for an interview is not an arrest. Id.
¶ 18. One of the police officers who responded to the call from the convenience store owner testified that Biggs was not under arrest when he was taken to the police station for further questioning. Biggs himself requested that police be called and that they render some sort of assistance. There is no evidence that he accompanied the police to the station involuntarily. The police had a cooperating individual who had caused a crime to be reported and was continuing to be helpful. Simply because the officers investigated Biggs's claims, he cannot now claim that he was under arrest. There was no evidence that he was being interrogated. As soon as a person starts to admit to criminal involvement, the police do not have to stop him and give warnings of constitutional rights. As has been said by two of the pre-eminent authorities on criminal constitutional law, "Miranda is designed to counteract the `inherently coercive' nature of custodial interrogations...." CHARLES WHITEBREAD & CHRISTOPHER SLOBOGIN, CRIMINAL PROCEDURE § 16.02 (1993) at 382. To require that voluntary cooperation be halted and warnings be given would transform the warnings from being a protection against coerced confessions into an impediment to consensual ones. That is not the law.

C. Sixth amendment right to counsel
¶ 19. Biggs next asserts that his Sixth Amendment right to counsel was violated as well. He claims that the interrogation was a "critical stage" of the proceedings at which he had the right to have an attorney present.
¶ 20. Under the Mississippi Constitution, the Sixth Amendment "right to counsel `attaches once the proceedings reach the accusatory stage.'" Crawford v. State, 716 So.2d 1028, 1038 (Miss.1998). The right to counsel attaches at the point in time when the initial appearance ought to have been held. Morgan v. State, 681 So.2d 82, 90 (Miss.1996). As is the case *325 with the Fifth Amendment right to counsel, a defendant's Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney. Id.
¶ 21. A review of the record reveals that at no time did Biggs request an attorney. Accordingly, we need not decide whether the proceedings had reached an accusatory stage.

III. Prejudicial effect of photographs
¶ 22. At trial, several photographs depicting the victim and the crime scene were admitted into evidence. Biggs claims that due to the gruesome nature of at least two of them, the photographs were prejudicial. Moreover, they were irrelevant and served no purpose other than to inflame the jury.
¶ 23. The supreme court has found that photographs of a victim have evidentiary value when they (1) aid in describing the circumstances of the killing, (2) describe the location of the body and cause of death, or (3) supplement or clarify witness testimony. Westbrook v. State, 658 So.2d 847, 849 (Miss.1995). The admissibility of photographs rests within the sound discretion of the trial court. Brown v. State, 690 So.2d 276, 289 (Miss.1996). The "discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Id.
¶ 24. State's Exhibit 11 is a photograph of the victim with her head wrapped in a blood soaked apron. The photo also depicts the lamp which was used to strike the victim in the head. State's Exhibit 4 depicts the victim's bloody shirt, which resulted from eight stab wounds to the chest. It also shows that the victim was bound. Exhibit 10 depicts the victim nude from the waist down, which is evidence of the sexual battery. Finally, Exhibit 9 is a photograph of the crime scene which shows several items laying at the foot of the victim's bed, including her panties. Such a photo is probative on the circumstances surrounding the death of Katie Middleton, namely the sexual battery. All of these photographs were relevant in describing the cause of death, as well as the circumstances of the killing. They were unpleasant and put forth graphically just what the defendant was accused of doing. The crime for which the trial is being conducted cannot be sanitized into an unrealistic fantasy. The pictures were probative and properly admitted.
¶ 25. The remaining two photographs, Exhibits 6 and 7, to which Biggs objects depict Katie Middleton's purse resting on a table and the contents of the purse which were emptied upon the table. It is unclear why Biggs finds these photos so objectionable. Regardless, we find that they did establish facts relevant to the determination of the guilt or innocence of Biggs, as they were probative of the burglary charge. They support the finding that Biggs broke into the home of Ms. Middleton with the intent to commit a felony inside.
¶ 26. Biggs argues that if the jury had to view the photographs at all, they should have been black and white rather than the more graphic color photos. "As long as the color photographs are probative, they are admissible under the same conditions as black and white photographs." Kelly v. State, 278 So.2d 400, 402 (Miss.1973).

IV. Jury instructions on duress
¶ 27. Biggs's defense at trial was duress. He claims that he was much smaller than his co-defendant, Tagert, and that due to his low average intelligence, he was easily swayed. He requested that the jury be instructed separately as to duress for each crime. The trial judge denied his request but gave an instruction that informed the jury that "[e]vidence has been presented that Edward Eugene Biggs acted under duress in committing the crimes charged.... If the State has failed to prove beyond a reasonable doubt that the *326 defendant acted voluntarily in committing the crime and not under duress, then you shall find the defendant Edward Eugene Biggs, not guilty."
¶ 28. The State responds that the jury was instructed on duress and that the remaining duress instructions were properly denied as repetitive. This Court does not review jury instructions in isolation. Refusal of a repetitive instruction is proper. Hull v. State, 687 So.2d 708, 722 (Miss.1996). The defendant received an adequate instruction on his theory of the case. Welch v. State, 566 So.2d 680, 684 (Miss.1990). He was not entitled to redundant instructions.

V. Speedy trial
¶ 29. Biggs was arrested on June 15, 1993, arraigned on February 11, 1994, and tried on August 5, 1996. He claims that the substantial period of time that elapsed between his arrest, arraignment, and trial violated both his statutory and constitutional rights to a speedy trial and prejudiced his defense. Specifically, he alleges that his defense was that he was under duress, as he was frightened of the larger boy, Tagert. By the time he was tried, he had grown much larger, and thus, the jury was not able to view him as he appeared at the time of the commission of the offense.
¶ 30. On December 18, 1995, Biggs filed a motion to dismiss the indictment based on the delay in bringing him to trial. A hearing was held on July 19, 1996, two weeks before trial.

A. Statutory right
¶ 31. The Mississippi Code provides all defendants with a right to a speedy trial. Under the statute, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss.Code Ann. § 99-17-1 (Rev.1994). The State has the burden of establishing good cause for the delay beyond 270 days. Herring v. State, 691 So.2d 948, 953 (Miss.1997). As the statute provides, continuances duly granted toll the running of the 270-day calendar. Two years elapsed between Biggs's arraignment and trial.
¶ 32. At the hearing on the speedy trial motion, counsel for Biggs stated this:
I have alleged violations of section 99-17-1 of the Mississippi Code in violations of the speedy trial rights guaranteed by the Mississippi and United States Constitution. And as this Court is well aware, the constitutional provisions involve a four prong test, the most important of which is prejudice.
Biggs's counsel then discussed prejudice and put on a witness to show how much Biggs had grown since the crime. That allegedly was important because the codefendant no longer greatly exceeded him in size, which made the argument that the older boy coerced Biggs into the crime less visually convincing to the jury.
¶ 33. The one quoted reference to the statute was the last reference anyone at the hearing made to statutory speedy trial issues. Only the constitutional guarantee was thereafter discussed. After the prosecutor had finished, Biggs's attorney stated "I would point out that the constitutional rights to a speedy trial run not from the date of the indictment but from the date of arrest which was June 15th, 1993, and that by the [State]'s own admission, there werethere's substantial passage of time."
¶ 34. The district attorney gave a brief response to that, and the judge then stated "I don't think there's been any violations of constitution, so I deny your motion. What do we have next?"
¶ 35. Something quite similar occurred in this same court but in a different case one month later. The supreme court on appeal of that stated the following:
On August 16, 1996, Judge Evans held a hearing on Berry's motion to dismiss based upon violation of her right to a speedy trial. At the close of the hearing, Judge Evans advised Berry's counsel *327 that he could call the court on the following Monday to obtain a ruling on the motion before trial was to begin on Tuesday. The record contains no order on Berry's motion to dismiss. The State contends that Berry's failure to obtain a ruling on her motion to dismiss precludes her from raising this issue on appeal. "The record does not reflect that any order was entered on the motion to change venue. It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." Martin v. State, 354 So.2d 1114, 1119 (Miss.1978). See also Holly v. State, 671 So.2d 32, 36 (Miss.1996) (failure to obtain ruling on motion in limine results in procedural bar). However, the right to a speedy trial is a fundamental constitutional right, and a defendant may only waive her speedy trial right by knowing and intelligent waiver.
Berry v. State, 728 So.2d 568 (¶ 3) (Miss. 1999).
¶ 36. In that case, there was a hearing but no ruling was ever made. In our case, the hearing resulted in a ruling but only on the constitutional question. Since Judge Evans ruled on that, the Berry holding does not apply that failure to get a ruling on whether a constitutional right has been violated only creates a waiver if the action was knowing and intelligent.
¶ 37. To the contrary, the supreme court in a case that may signal a new factor to be considered in statutory speedy trial allegations, has held that the entire statutory right may be waived by failure to demand a speedy trial during the 270-day time period. Walton v. State, 678 So.2d 645, 650 (Miss.1996). Regardless of whether that will now be considered a waiver, Walton itself involved a defendant who was released on bail during most of the delay and that also appeared to be a factor.
¶ 38. Since this was not a constitutional right on which Biggs's attorney failed to get a ruling, we find that the matter was waived. Perhaps the judge overlooked the statute, though its mention at the hearing was perfunctory. Perhaps all the parties forgot it. Instead, perhaps Biggs was not concerned about the statute since more than half of the delay occurred after Biggs asked for a psychiatric examination to determine from what disease or retardation Biggs might suffer. Defense counsel alone was to be present during the exam, and the results were to be sealed. It would appear that Biggs's counsel was, among other interests, seeking information on whether Biggs was competent to stand trial. According to the prosecutor, no confirmation had ever been received by the State that he was competent. Indeed, exactly when the State learned, if it ever did, of the results of that exam is unclear. Regardless, there is no ruling on the statutory issues.
¶ 39. We decline to go past the procedural bar of Biggs's not getting a ruling. Had the failure to get a ruling been remedied, we might well have a clearer record to understand regarding the evidence. To which party, for example, should each segment of the delay be credited in order to determine whether the trial occurred more than 270 days following arraignment, without continuances validly given and considering only delays caused by the State?

B. Constitutional right
¶ 40. There was a ruling on the constitutional speedy trial issue. Had there not been, consistent with Berry we would remand so that the matter could be re-addressed.
¶ 41. The United States Supreme Court set forth the test for a defendant's constitutional right to a speedy trial in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) whether any prejudice resulted to the *328 defendant as a result of the delay. Id. at 530-32, 92 S.Ct. 2182.

1. Length of the delay
¶ 42. The Mississippi Supreme Court has held that a delay of eight months or longer is presumptively prejudicial. Herring v. State, 691 So.2d 948, 955 (Miss.1997). Where there is an extensive delay prior to trial, that is a significant factor in the balancing test. Id.
¶ 43. The constitutional right to a speedy trial attaches at the time that a person is arrested or when an indictment or information has been filed. Flores v. State, 574 So.2d 1314, 1321 (Miss.1990). Biggs was arrested June 15, 1993 and tried on August 5, 1996. The thirty-eight month delay is presumptively prejudicial and warrants further inquiry.

2. Reason for the delay
¶ 44. The court has held that "[o]nce we find the delay presumptively prejudicial, the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." Wall v. State, 718 So.2d 1107, 1113 (Miss.1998). The record is less than thorough on this issue. Following Biggs's June 15, 1993 arrest, a transfer hearing was initiated in the youth court on December 30, 1993. There, both parties agreed to continue the matter until January 5, 1994, to determine whether adequate cause existed to transfer the burglary and sexual battery charges to the circuit court where Biggs would be tried as an adult.
¶ 45. The record explains some but not all of the remaining delay. The case was originally scheduled to be tried on August 1, 1994. However, in July of that same year, the parties agreed to reset the trial date for October 1994. The State at the hearing on Biggs's motion to dismiss for speedy trial violations conceded that this time is not counted against Biggs.
¶ 46. In September of 1994, before the October trial date, Biggs asked for and was granted a psychological examination. Until the examination that Biggs himself requested was completed, the days after the canceled October trial date count against the defendant. No written confirmation of the examination appears in the record. When the State became aware that the exam had occurred is also unknown, but there is some evidence that the exam occurred in December 1994. That same month, Biggs's attorney appeared at the trial of the codefendant and argued that Biggs might not be competent to stand trial much less understand whether to testify in the codefendant's trial.
¶ 47. The State contends that the entire period from September 1994 until January 1996 is taxed to Biggs. However, a defendant's injecting of the issue of competency would not allow the State, once the examination was conducted, to slacken in its efforts to bring the defendant to trial. What we cannot tell from this record is what the State was told, or what efforts it took or could have taken to determine whether the exam had been concluded. In one case the supreme court found a violation of the speedy trial statute when the State failed to ensure that the defendant received a psychiatric examination that had been ordered. Turner v. State, 383 So.2d 489, 490 (Miss.1980). There, two weeks after arraignment, the defendant's counsel filed a motion for a psychiatric examination. An order granting the motion was signed on August 8, 1977 but not filed until April 7, 1978. New defense counsel was appointed in December 1977. Nothing was done about the matter until the defendant himself, incarcerated in Hinds County, wrote a circuit judge to determine the status of the case. The investigation revealed the pending but unfiled order for an exam. At the court's request, a new motion for a psychiatric examination was filed and it was granted on June 30, 1978. A report on the completed exam was given the court on July 13, 1978. The supreme court found that "the responsibility for having a psychiatric examination made in compliance with the *329 order ... rested upon the state rather than the defendant. Failure to carry out this responsibility cannot be charged to the defendant." Id. at 491.
¶ 48. Importantly, this ruling was criticized in Walton and the dissent which focused on whether there was prejudice was found to be more persuasive. Walton, 678 So.2d at 650. In Biggs's situation, the exam apparently was promptly performed but not necessarily promptly reported to the State. There are other uncertainties on this record. However, at least until the next available trial date after the apparent December 1994 exam, the delay after October 1994 was Biggs's responsibility.
¶ 49. Biggs filed a motion for a change of venue. It was granted on October 3, 1994. No specific new venue was named. The next order in the record is dated over a year later and sets the case for trial in Jasper County on February 5, 1996. Whatever the venue, trial had to be delayed past the December 1994 mental examination until the next term of court in the county where the case would ultimately be tried. Exactly what occurred in 1995 is unclear. The transcript reveals that at a July 1996 hearing on Biggs's motion to dismiss, the prosecutor remarked that on "February 10, 1995, there was a docket call in Simpson County [the county of the original proceedings]. There was not an attorney present representing Mr. Biggs... August 11th, docket call, no attorney there on behalf of Mr. Biggs." Biggs asserts that the State failed to mention his case at those same docket calls.
¶ 50. We find it impossible to determine from the record what occurred during 1995. If the State was ready to proceed at the docket calls and the defense failed to appear, there still should be an order continuing the cause. None is in the record. The trial judge made no specific findings.
¶ 51. Following a status conference held in September 1995, trial was tentatively scheduled for November 27, 1995. Due to a scheduling conflict of one of Biggs's attorneys, it was then set for February 5, 1996. Another of Biggs's attorneys required surgery, and the trial was rescheduled for August 5, 1996, when it finally occurred. Also during that period another psychiatric examination was conducted as a result of court order.
¶ 52. The five-month delay from the arraignment until the agreement to reset the trial date is assessed to the State. The period from October 1994 until the first date that the trial could be held after the mental exam in December 1994 is the defendant's responsibility, as are the days between November 27, 1995 and the actual trial. The time in between, including that involving the failure to appear at the February and August 1995 Simpson County dockets calls, is unclear. However, since it is the State's burden to prove compliance with the speedy trial guarantee, the suspect gaps are considered the fault of the State. Thus there was a substantial delay.

3. Biggs's assertion of his right to a speedy trial
¶ 53. "[A]n accused has no duty to bring himself to trial.... Still he gains far more points under this prong of the Barker test where he has demanded a speedy trial." Perry v. State, 637 So.2d 871, 875 (Miss.1994). It is the State, of course, that bears the burden of bringing an accused to trial in a speedy manner. While a defendant may have some responsibility to assert a speedy trial claim, the primary burden is on the courts and the prosecutors to assure that they bring cases to trial. Id.
¶ 54. Biggs asserted his right to a speedy trial in a motion to dismiss which he filed on December 18, 1995. The supreme court has held that a "demand for dismissal for violation of the right to a speedy trial is not the equivalent of a demand for speedy trial. Such a motion seeks discharge not trial." Perry, 637 So.2d at 875. In Perry, demand for dismissal coupled with a demand for an instant trial was insufficient to weigh this factor in favor of the defendant, where the *330 motion came after most of the period of delay had elapsed. Id.
¶ 55. A period of over two years elapsed between Biggs's arrest and his motion to dismiss. Accordingly, we find this factor does not weigh in his favor.

4. Prejudice to Biggs as a result of the delay
¶ 56. Biggs claims that he suffered prejudice due to the fact that his appearance changed during the three years which elapsed from his indictment until his trial. In his view the jury was less likely to believe that he was under duress at the time of the commission of the crimes because he was eighteen at the time of trial and much larger than he was when the offenses occurred three years earlier.
¶ 57. A defendant does not bear the burden of proving actual prejudice. When the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant. Duplantis v. State, 708 So.2d 1327, 1335 (Miss.1998). However, if the defendant fails to make a showing of actual prejudice to his defense, this prong of the balancing test cannot weigh heavily in his favor. Id.
¶ 58. Delay may prejudice the defendant in two ways. First, the delay may actually impair the accused's ability to defend himself. We recognize "the possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost...." U.S. v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Additionally, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett v. United States, 505 U.S. 647, 655-56, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
¶ 59. Second, the defendant may suffer because of the restraints to his liberty. Skaggs v. State, 676 So.2d 897, 901 (Miss. 1996). "[W]holly aside from possible prejudice to a defense on the merits, [delay] may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" Atterberry v. State, 667 So.2d 622, 627 (Miss.1995). That being said, still the court has held that "[i]ncarceration alone is not enough prejudice to warrant reversal." Williamson v. State, 512 So.2d 868, 877 (Miss.1987).
¶ 60. Biggs has not shown that the delay impaired his ability to defend himself. We find neither inaccessible witnesses nor lost evidence. The fact that his appearance changed and that he looked less sympathetic for a variety of reasons is one of the inexorable realities of the end of adolescence. We will not identify that as a speedy trial prejudice factor. Through pictures and verbal descriptions the point was made in Biggs's trial, even if we concede that it likely was not as dramatic.
¶ 61. As to the restraints on Biggs's liberty, we presume that he was incarcerated from the time of his arrest until his trial, or approximately thirty months. The record is unclear on this matter, although it does reveal that bail was set on the two non-capital offenses. Incarceration alone is not enough prejudice to warrant reversal. Williamson v. State, 512 So.2d 868, 877 (Miss.1987). Because we find no other prejudice was suffered, the lengthy pre-trial incarceration does not mandate a reversal.
¶ 62. Where the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting a speedy trial claim. Perry v. State, 637 So.2d 871, 876 (Miss.1994).
¶ 63. The constitutional speedy trial guarantee as analyzed under the Barker factors is not a mathematical equation, but an effort to protect a defendant from the unfairness of not having guilt or innocence *331 determined promptly, except for reasons of the defendant's own making or unless there is a good cause delay by the State, especially if the defendant has demanded a prompt trial and has suffered prejudice. We find no prejudice and hold that the trial court was correct that the constitutional guarantee was not thwarted in this case.

VI. Sentencing order of codefendant
¶ 64. Biggs's defense that his codefendant coerced him into the crime was allegedly damaged by the trial court's exclusion of the codefendant's sentencing order. Evidence of David Tagert's guilt would allegedly support his defense of duress. That is, if the jury was made aware that Tagert was convicted of all the crimes of which Biggs was accused, they would be more likely to find that Biggs was in fact influenced by Tagert and committed the crimes at his direction.
¶ 65. The relevancy and admissibility of evidence are largely within the discretion of the trial judge and reversal is proper only where that discretion has been abused. Terry v. State, 718 So.2d 1115, 1123 (Miss.1998). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Indeed, usually it is a defendant arguing that his trial was unfairly prejudiced by the State inadvertently or consciously informing the jury in some way that a codefendant has been convicted by another jury. Parker v. State, 724 So.2d 482, 485-86 (Miss.Ct.App.1998). The problem in that situation is that the current jury will let the decision of the first jury influence them to the defendant's detriment.
¶ 66. The evidence that Biggs wished to introduce was irrelevant. The fact that Tagert was convicted of the same crimes does not make it any more likely that Biggs acted under duress. The evidence at trial without contradiction indicated Tagert's role and therefore his guilt. We find no error in excluding proof of Tagert's sentence.

VII. Transfer from youth court and trial as adult on the burglary charge
¶ 67. The Mississippi Code provides that "[t]he youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child ... except where any act committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death, in which, under such circumstances, the circuit court shall be the court of original jurisdiction." Miss.Code Ann. § 43-21-131 (Rev.1993). Thus, the circuit court had original jurisdiction over the kidnapping and capital murder charges, while the youth court had exclusive jurisdiction over the burglary and sexual battery charges.
¶ 68. Where the youth court has such exclusive jurisdiction, juveniles may not be tried as adults unless the youth court, in its own discretion, decides to "transfer jurisdiction of the alleged offense... or a lesser included offense to the criminal court which would have trial jurisdiction of such offense if committed by an adult." Blue v. State, 674 So.2d 1184, 1230 (Miss.1996). However, before transferring a juvenile for trial in the circuit courts, the youth court must first conduct a bifurcated hearing and (1) determine ... [that] probable cause exists to believe that the child committed the alleged offense; and (2) find by clear and convincing evidence that there are no reasonable prospects of rehabilitation within the juvenile system. Miss.Code Ann. § 43-21-157(3), (4) (1972).
¶ 69. A transfer hearing was held in the present case. The youth court referee found that probable cause existed to believe that Biggs committed both the burglary and the sexual battery offenses. Biggs does not challenge the finding of probable cause as to the sexual battery charge but complains that no probable *332 cause existed to warrant the transfer of the burglary charge from the youth court to the circuit court. Specifically, he argues that there was no evidence that he intended to commit a crime inside Katie Middleton's home after gaining entry.
¶ 70. At the transfer hearing, the Simpson County sheriff testified that a statement was taken from Biggs by the Louisiana authorities. In that statement, Biggs admitted the intrusion into the home of Katie Middleton and that he had a knife. Testimony was presented that Middleton was stabbed, her car and money stolen, and that she was physically and sexually assaulted. Further, Biggs's fingerprints were found at the scene. There was probable cause to believe that since Biggs likely committed a crime after entering Katie Middleton's home, that it was also his intent when he entered.
¶ 71. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT ON CHANGE OF VENUE FROM SIMPSON COUNTY OF CONVICTION OF COUNT I BURGLARY OF AN INHABITED DWELLING, COUNT II KIDNAPPING, COUNT III SEXUAL BATTERY AND COUNT IV CAPITAL MURDER AND SENTENCE OF FIFTEEN YEARS ON COUNT I TO RUN CONCURRENTLY WITH THIRTY YEAR SENTENCE ON COUNT III BUT TO RUN CONSECUTIVELY WITH LIFE IMPRISONMENT ON COUNT II AND LIFE IMPRISONMENT ON COUNT IV IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.